LATHAM V. PLEDGER.

It is a gneral rule, that the declarations or admissions of one who assumes to be agent of another, are not of themselves admissible to prove such agency; when his agency is proved, his representations in relation to acts within the scope of his authority, which are part of the *res gestæ*, are admissible in evidence against the principal.

An agent to whom is intrusted the management and control of slaves, under express or implied authority to purchase supplies for them, on the credit of their owner, cannot bind the owner, for articles which cannot, under any circumstances, be properly considered necessaries for such property.

Where the declaration sought to charge the defendant with goods sold to her son, on the ground that the defendant had placed her negroes in a county where she herself did not reside, under the control of her son, and had knowingly and fraudulently suffered her son to represent himself as the owner of said negroes, upon the faith of which fraudulent representations, the plaintiff had credited the goods, but had afterwards learned that the son was only the agent of his mother, the defendant; and at the trial, the plaintiff sought only to establish the agency, or a holding out as such; *Held*, That it was competent for the defendant to prove that she placed the negroes under the charge of another person; that her son was not her agent; and that the goods did not come to her use. It would have been otherwise, if she had knowingly suffered him, by his acts, to gain the reputation of being her agent, and the plaintiff had credited him on the faith of such reputation.

Error from Matagorda. This is an action to recover from the defendant in error the sum of three hundred and sixty-six dollars and sixty-six cents, on account of goods, wares and merchandize, alleged to have been sold to her through her son, and agent, Wm. Pledger; the account running from July, 1850 to February, 1851. It is averred that the goods were for the use of defendant, and for the benefit of her family and negro slaves; and that she refuses payment of the sum which they are reasonably worth, though the same has long since been due. The plaintiff then alleges that the defendant, through her said agent, about the 15th January, 1851, contracted, for the payment of the said debt, to sell the petitioner cotton raised by her slaves and her said son, on the plantation of Charles Messer, in Wharton county; but the same has not been delivered according to the stipulation of the contract, to the great damage of petitioner. It is further averred that the defendant contriving to defraud petitioner, had her slaves cultivating on the plantation of Charles Messer in Wharton county, the said William Pledger acting as her overseer and agent, with full authority to contract debts, for the use of the said slaves, and of the said defendant and her family, and to pay the same by the sale of cotton; and upon this authority, the petitioner was induced to give credit to the said defendant and her agent, in the amount aforesaid. But the said defendant has fraudulently refused payment, or to deliver the cotton, denying the authority of her said agent, after he had become insolvent, and abandoned the State.

The petitioner further charges that the defendant had her slaves in Wharton county under the entire control of her said son, and gave him full authority to represent said slaves and the cotton they made, as his own, and that the said William did represent that the slaves and the proceeds of their labor were his own, which representation were well known to defendant, and not denied by her; and that believing said representation to be true, and through other false and fraudulent devices of this defendant, the petitioner did sell goods, wares

and merchandize, on a credit, to the said William, to the amount of three hundred and nine dollars and sixteen cents, and for which no payment ever has been made, &c., &c.

The Defendant filed a general demurrer and a general denial. The plaintiff, in an amended petition, among other matters, alleged that in all the sales and delivery of the said goods, &c., the petitioner did not know that William Pledger was the agent of this defendant, until the first day of January, 1851: but has since discovered that he was such agent.

By the deposition of the witness Deaderich, the plaintiff proved, among other matters, that the defendant, in the years 1850 and 1851, had slaves, at the plantation of Charles Messer, in Wharton county, raising corn and cotton ; did not know, from personal knowledge, who was her agent ; that William Pledger, at different times, purchased goods at his store in Wharton, for the use of his mother, the defendant, and for the use of the negro slaves ; and from various matters, he understood that the son was her agent, exercising control over said slaves and their labor ; and such, he thinks, was the general understanding in the town ; that, in 1850, Wm. Pledger contracted debts with him, to the amount of one hundred and eighty dollars ; understood from his promises, and from the fact of paying something out of the crop, that the debt was to be paid out of the crop ; that William Pledger paid him one bale, and Peter D. Pledger, a son of defendant, has paid, out of the crop of 1850, what he considered to have been purchased for the use of the slaves and of the mother's family ; the understanding of the town was, that Wm. Pledger had an interest in the property, and was the agent of the mother in her interest.

B. F. Milbourne deposed, in effect, that William Pledger, in 1850 and 1851, acted as his mother's agent in controlling her slaves in Wharton county ; that he was understood to be part owner of said slaves ; and that he contracted debts with the witness, to the amount of three hundred dollars, with the understanding that he was part owner of the slaves, and the

agent of his mother; and that the debt was to be paid out of
the crop, which was accordingly done, by virtue of an order
from Wm. Pledger for cotton, being part of the crop; the son
William had apparently the entire control of the negroes in
Wharton county.

Charles Betts deposed that he did business for the plaintiff,
in 1850 and 1851; that he did not know that Wm. Pledger
was his mother's agent, until the last of the year 1850, when
he found out that he had his mother's slaves in charge; that
he credited him, believing that he owned part, at least, of the
slaves; that he called them his own, and exercised apparent
ownership, &c.; and that he promised to pay for the goods,
out of the coming crop; that, before the witness called for
the cotton, Wm. Pledger had left the State, and the defend-
ant forbade his taking it, but promised, through her son Pe-
ter, to pay part of the debt; that her son Peter promised a
part of it should be paid, if I would deduct a portion of it;
that Willam bought articles, as he said, not only for planta-
tion use, but for his mother and sisters.

The defendant proved by Peter D. Pledger, that William
was not his mother's agent; that he had no right to purchase
any thing in the care and control of her slaves; that he heard
his mother give them in charge to Charles Messer. The
witness further stated that none of the articles went to the
use of his mother and family; that he lived with his mother,
in 1850, 1851 and 1852; that he witnessed the contract be-
tween his mother and Messer; and that the latter was to pro-
vide the slaves with necessaries.

The Court charged the jury, that if, from the testimony,
they believed Wm. Pledger was the agent of his mother, in
controlling and providing for her slaves and overseeing them,
with a general superintendence over the crops, she is respon-
sible for whatever was purchased by him, for carrying out the
object of such agency; that is for such goods as were neces-
sary for the use and comfort of the slaves, and for taking care
of, and disposing of the crops; that to this extent she would

be responsible, if she knowingly permitted her son to assume to act for her in purchasing such articles ; and that for articles not necessaries, it must appear, from the evidence, that the son had authority from the mother to purchase on her account.

There were verdict and judgment for defendant ; and a motion for a new trial being overruled, plaintiff gave notice of appeal, and afterwards brought up the case by writ of error.

The errors assigned are :

1st.   In refusing evidence offered by plaintiff, to prove the agency of William Pledger, as contained in the bills of exceptions filed by plaintiff.

2nd.   In permitting the testimony of Peter D. Pledger to go to the jury, as contained in the plaintiff's bill of exceptions.

3d.   The Court erred in its charge to the jury ; and, also,

4th.   In overruling motion for a new trial.

The evidence refused, alluded to in the first assignment, was part of the answer of Betts, to the third interrogatory, to the effect that Wm. Pledger informed the witness, about the last of December, 1850, or the first of the year 1851, that he was his mother's agent, and that he had made the bill in the store for his mother, and that she would pay it, and that this was the first witness knew of the matter, and that he was to pay witness in cotton, which the slaves were making, and that the agreement was made in the year 1850 ; and also the reply of Betts, to the fourth interrogatory, viz : that Wm. Pledger called for the bill of goods about the first of January, 1851 ; that he informed the witness the bill was made for his mother, and that she would pay it ; that the defendant must have had the bill some time, when Wm. Pledger had gone ; on application for payment, Peter Pledger, son of the defendant, said he would pay part of it.   And the Court further ruled that no admissions or declarations of William Pledger, either as to his agency for this defendant, or as to this defendant's being liable for any of the said agent's contracts on this behalf, or otherwise, should go to the jury.

*W. Field*, for plaintiff in error.  I. From the first bill of exceptions, it will be seen that there was strong testimony that William Pledger was the agent of the defendant at the time he purchased the articles, and at the time he made the admissions that the goods were purchased by him for this defendant and would be paid for by her, &c.  On page twenty-five it will be seen that the Court ruled that no admissions or declarations of William Pledger, either as to his agency for this defendant in this behalf, or as to this defendant being liable for any of the said agent's contracts in this behalf, should go to the jury.  Now it may be true, that the plaintiff could not give William Pledger's admission to prove his agency.  But as plaintiff had shown by strong testimony, that William Pledger was the agent of his mother, in like matters, the Court should have left it to the jury to say whether William Pledger was his mother's agent or not, and if so whether she was liable. The Corrt prejudged the case and presupposed that the fact of agency was not proven.

II. The testimony of Peter D. Pledger should not have been admitted, because it brought no knowledge to the plaintiff, of defendant's giving Charles Messer charge of the slaves.  Nor did it legally show William Pledger was not this defendant's agent.  Nor did it show any time when " he heard his mother give the slaves in charge to Messer."  It merely shows that the witness swore to a matter of law, without a date to found his legal opinion on.  And what right had the defendant to make her own statement to a third party evidence in this case ? Messer may not have accepted the charge or may have soon repudiated and abandoned it ; and because the witness " heard his mother give the slaves in charge to Messer," it does not follow that she did not authorize William, her son, to purchase goods for her.

III. It will be seen the Court charged the jury " that it " must appear from the evidence, that William Pledger had " her authority to purchase such articles on her account."— This part of the charge was at least sufficient to mislead the

jury, and is not law. Because this would require the plaintiff to prove a special authority in the agent, to purchase each item. And it assumes that the authority to purchase just such articles must be proved. Now, if he had authority to purchase articles of merchandize, the seller is not bound to prove that the agent had authority to purchase only just such articles and no other of the same genus.

HEMPHILL, CH. J. We are of opinion that there was no error in excluding the deposition refused, and also the representations of Wm. Pledger, as to his agency on behalf of his mother, the defendant. From the allegations of the petition, and the evidence of Betts, it appears that the credit for the goods was extended to William Pledger personally, and not to him as agent of his mother. The fact of there being such agency, or any pretensions to such agency, was not known to plaintiff or his agent, until the close of the year, when he was apprised by Wm. Pledger himself, that such agency existed, and that he was not acting for himself. If the representations by Pledger, of his assumed agency, were admissible, under any circumstances, as against his principal, yet they were properly rejected in this case, for the reason that they were not made at the time of the contract or the purchase of the goods. Declarations of an agent, to be binding on the principal, must be made during the continuance of the agency, "in regard to a transaction then depending." They must constitute a part of the *res gestæ*—a part of the contract itself—for it is upon this ground that they are admissible, and not merely because they are admissions or declarations. (4 Wend. R. 397; Story on Agency, Sec. 134; 1 Greenleaf on Ev. Sec. 113; 10 Vesey, 123.)

But it is a general rule, that the declarations or admissions of one who assumes to be agent for another, are not of themselves admissible to prove such agency. When his agency is proved, then his representations in relation acts within the scope of his authority, and which will bind his principal, may

be admitted, and as part of the *res gestæ*, will also be binding. (2 Cowen & Hill's Notes, p. 189, note 187; 1 Phillips on Evidence, p. 103; 3 Blackf. *436*; *9 Peters, 689*; 1 Conn. R. 255.) But the agency must first be proved, as derived from express delegation or by facts admissible and sufficient for that purpose, before the declarations of the agent, respecting the subject matter, can affect the principal. There was, therefore, no error in excluding such admissions, from the consideration of the jury. The general charge, as given by the Court, afforded the defendant the benefit of all the deductions from the evidence, as against the defendant, to which he was entitled. The conduct, dealings and declarations of Wm. Pledger, in other contemporaneous affairs, was given in evidence, and the jury were instructed, in effect, that if, from the evidence, his agency on behalf of his mother, was established, she should be held responsible to the plaintiff for whatever was purchased to carry out such agency. This gave the defendant the benefit of all the legitimate evidence to establish his agency, excluding only his own admissions, which were incompetent for that purpose.

The jury were further instructed, that for articles not necessaries, it must appear that Wm. Pledger had authority from the defendant to purchase. There was no error in this instruction. The defendant could be bound by no act of Wm. Pledger without her own consent or authority. This may be given in various modes. It may be proven by various facts. It may be implied from recognition and acts of the principal; but it must be established, before the principal can be bound.

The instructions were as favorable to the plaintiff as, under the evidence, could be supported in law. In fact, this account condemned itself, on its face. But a small portion of the articles purchased could have been necessaries for the plantation or the slaves. They were, many of them, luxuries, if spirituous liquors, cigars, and such like articles, can be denominated luxuries. If managers of slave property, under pretence of their agency, can legitimately contract accounts of the char-

acter of the one presented in this petition, owners would very soon be stripped of their possessions, to pay for debts not contracted by themselves, nor with their consent, nor for the benefit of themselves, their slaves or their families, in any shape or degree.

The second assignment is, that the Court erred in permitting the testimony of Peter Pledger to go to the jury. If the fact that Wm. Pledger was acting as agent of his mother, in purchases for plantation use, had been fully established; if such agency had been recognized and acquiesced in by the defendant, and such had been the understanding of the community; and if, under this supposition of authority on the part of Wm. Pledger, the plaintiff had sold such articles in his account as were necessaries, (leaving the other articles out of the question,) then the ruling of the Court, admitting the evidence of Peter Pledger as to the fact that his brother was not such agent, would have been erroneous. If Wm. Pledger had been held out to the world, by his mother, as her agent, by her authority, either express or implied, and this had been so understood by the plaintiff, then her private arrangements with Mr. Messer, by which the slaves were committed to his care and control, though apparently under the supervision of Wm. Pledger, could not have affected the contracts between the plaintiff and her publicly recognized agent, if made within the scope of his authority. But the plaintiff in this case was not deceived by any such assumption or recognition of agency. He did not, at the time of making the sales, know that the slaves belonged to the defendant, or that Wm. Pledger, whom he credited, was acting as her agent, or that he had any pretence to assume such authority. If it should appear then that the slaves were really under the control of Wm. Messer, the plaintiff could not allege that he believed them to be under the control of Wm. Pledger, as agent of the defendant, and to permit proof that they were under the care of Mr. Messer, would be to practice a deception upon him. For he did not know or believe at the time of the sale, that the negroes were

the property of Mrs. Pledger, or were under the control of her son, as her agent. He deceived himself by not making inquiries as to ownership of the property, and as to who was responsible for debts contracted for its benefit; for as to the other articles, not necessaries, there can be no pretence that this defendant is responsible.

The plaintiff trusted Wm. Pledger altogether on his personal responsibility, and with the hopes of receiving payment from the crop. No credit was given him as the agent of the defendant; and any evidence which shows, in fact, that Wm. Pledger was not such agent, cannot be detrimental to the plaintiff, inasmuch as he did not sell to him, credit him as, or believe or know him to be, the agent of the mother, at the time of making the sale and the delivery of the goods; and there was no error, therefore in permitting the testimony of Peter Pledger to go to the jury.

There was no evidence to prove that any of the articles, in this account, were what would be deemed necessaries for slaves, or proper in the care and management of a plantation, or that they were necessary for the slaves or the farming operations, under the control of Wm. Pledger. The witness Peter Pledger states positively, that none of the articles were used by, or went to the benefit of, his mother and family.

Upon the whole, the facts appear to have been fairly submitted to the jury; and there appears to be no error in the case, at least none such as would authorize us to set aside their verdict. It is therefore ordered that judgment be affirmed.

Judgment affirmed.