**J. E. KNIGHT, Appellant,**

**v.**

**Ed HICKS, Appellee.**

**No. 8396.**

Court of Civil Appeals of Texas, Amarillo.

Jan. 7, 1974.

Rehearing Denied Feb. 11, 1974.

**640**

Crenshaw, Dupree & Milam, Tom S. Milam and Cecil C. Kuhne, Lubbock, for appellant.

Cowsert, Bybee & Line, Ray Cowsert, Hereford, for appellee.

ROBINSON, Justice.

This is a suit by Ed Hicks against J. E. Knight to recover a commission in connection with the sale of a tract of farm land by Knight, the owner, to Joe Bob Johnson. The trial court entered judgment on a jury verdict. The defendant appeals. The judgment is affirmed.

By appropriate assignments of error, defendant challenges the sufficiency of the evidence to support the jury's finding that plaintiff Hicks was the procuring cause of the sale by Knight to Joe Bob Johnson.

The testimony concerning the times and nature of the relevant conversations is partially in conflict. In such a case the jury may accept all, part, or none of the testimony of any one witness, or it may accept part of one witness' testimony and part of another's. Reinke v. Thomas, 369 S.W.2d 692 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.).

According to the version of the testimony most favorable to plaintiff, he was told by Herschel Johnson in April or May of 1971 that he was looking for a place for his son, Joe Bob Johnson, to buy. Hicks referred him to a tract of land called the Fleming place. Herschel Johnson said that he was going to pass on any land that his son, Joe Bob, bought, that he would get Joe Bob and go look at the land, and that it was not necessary for Hicks to show it to them. In this connection, Joe Bob Johnson testified that he was the one interested in the purchase of the land, that he did go to look at it with his father, and

they decided not to buy it. Herschel Johnson told Hicks to continue to look for something.

Thereafter in July or August, Hicks sought to interest Herschel Johnson in another place that Hicks had for sale. Herschel Johnson said that they would not be interested in this particular place because it was too far from them. This conversation took place at the barn on the Johnson farm. Joe Bob Johnson was present under the shed. He stopped work once in awhile and came over to listen, but did not say anything. During the conversation, Herschel pointed to Knight's land across the road and said that that was the place he would like to buy if Hicks could get a listing on it. He then asked about the possibility of his buying the land and then having Joe Bob get a hundred thousand dollar loan on it and selling it to him. Hicks contacted Knight and got an oral listing on the Knight land. Hicks told Joe Bob Johnson that he had a listing on the Knight land. He told Joe Bob that he had the listing and then went to talk to Herschel Johnson whom he told that Knight wanted $500 per acre. Herschel Johnson told Hicks that he would discuss it with Joe Bob and let him know. That afternoon Herschel Johnson told Hicks that he wanted to offer $450 per acre. Hicks informed Knight that he had an offer on the land and then got the written listing that was offered in evidence.

Shortly after signing the listing Knight saw Herschel Johnson and asked him if he would be interested in buying his land. Johnson told Knight that he had not talked to anyone about buying the land and Knight priced it to him less the commission. Herschel Johnson then asked Hicks to stay out of the deal and said that Hicks would "blow the deal" if he told Knight of their conversations. He offered to pay Hicks a portion of the commission if he would leave the deal alone. The next morning Hicks talked to Knight and told him that he had talked with Herschel Johnson concerning the property and that

Herschel had offered to pay part of the commission. Hicks told Knight, "the plan is for him to buy the land, and Joe Bob is going to be interested in it."

Following this course of events, Knight contacted Herschel Johnson who told him that he could not handle the property with the $64,000 loan on it. Knight said, "Well, I am going to try to sell it to Joe Bob." Joe Bob Johnson and Knight reached an agreement. Herschel Johnson, Joe Bob Johnson, and Knight went to the lawyer's office where they gave him the information for the sales contract to Joe Bob Johnson. The sale was later completed, the deed delivered, and the consideration paid.

The rule of law which governs this case is set forth in Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295 (1916), 195 S.W. 848 (1917) as follows:

" . . . But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced."

Applying this rule the only question is whether it was through Hicks' efforts that

Knight was caused to enter upon the negotiation with Joe Bob Johnson, so as to constitute Hicks the procuring cause of the sale. The question is one of fact for the trier of the facts. We find that the evidence is sufficient to support the jury finding that the efforts of Ed Hicks were the procuring cause of the sale by J. E. Knight of land to Joe Bob Johnson. The question of procuring cause is not determined by the fact that Hicks did not personally show the land to Joe Bob Johnson. It rests on the proposition supported by the evidence in this case that Herschel Johnson did not enter the sales transaction solely on his own behalf, but that it was understood between the parties that Joe Bob Johnson was an interested party in the conversations concerning the land. Shepard v. Wesson, 266 S.W.2d 393 (Tex.Civ. App.—Amarillo 1953, no writ).

■ Defendant correctly argues that where the negotiations with a buyer have broken down and the broker has abandoned his efforts, and later the owner sells to the same buyer, a different rule prevails, but that rule is not controlling here because there is ample evidence Hicks had not abandoned the transaction.

■ Defendant's next contention is that the undisputed evidence shows that the listing agreement relied on by plaintiff is insufficient as a matter of law to comply with the requirements of the Statute of Frauds and Article 6573a, Vernon's Ann. Civ.St.

Section 28 of Article 6573a, V.A.C.S., provides:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum, thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

There are only four requirements for such an agreement or memorandum to be valid: (1) it must be in writing and must be signed by the person to be charged with the commission; (2) it must promise that a definite commission will be paid, or must refer to a written commission schedule; (3) it must state the name of the broker to whom the commission is to be paid; and (4) it must, either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed. Levenson v. Alpert, 399 S.W.2d 955 (Tex.Civ.App.—San Antonio 1966, no writ).

■ The instrument relied on by plaintiff is a printed form with blanks for a legal description of the land and the price per acre, as well as numerous other blanks for items of information concerning the land. At the time the instrument was tendered into evidence, some blanks were filled in and many were not, but all of the essential elements for an enforceable agreement to pay a commission were included in the instrument either in printed form, or by handwriting in the appropriate blanks. Defendant does not deny that he signed the instrument, but contends that when he signed this instrument, the only thing that had been filled in was the amount of "five-twelve-and-a-half" (dollars per acre) and that the term "exclusive" had been marked out. He testified that none of the other blanks were filled in on the instrument when he signed it. An examination of the instrument relied upon shows that the legal description of the property is filled in in handwriting in a blank on the first page. Defendant's testimony that none of the blanks were filled in at the time he signed it amounts to an assertion that at least this essential element of an enforceable listing agreement was not in the instrument that he signed. No issue was submitted to the jury concerning whether any particular blank was filled in at the time the instrument was signed and there was no objection to the charge for the failure to submit such an issue. De-

fendant contends that his testimony in this respect is uncontroverted and asserts in his brief that plaintiff admitted that the essential elements were not filled in at the time it was signed by defendant. Plaintiff Hicks' testimony in this respect follows:

"Q. All right. Now, directing your attention to the first part, on the front side of that paper there, (the listing agreement), whose writing is that?

"A. That is mine.

"Q. When did you put that writing in?

"A. September the 9th, 1971.

"Q. Was it in the presence of J. E. Knight?

"A. The most of it was, a part of it wasn't.

"Q. All right. Now tell the jury what part of it was not put in in the presence of J. E. Knight?

"A. I wrote his name as owner at the top of the listing. I wrote the legal description, and I wrote, the number of acres, I wrote the 'Irrigated—yes;' I wrote '$500.00 an acre,' which was what he told me to sell it for."

\*    \*    \*    \*    \*    \*

"A. And then he asked me there, when he signed the listing, to mark that out and make it $512.50."

\*    \*    \*    \*    \*    \*

"A. Well, (on the front page) from the '2nd lien' on down, I wrote that in his presence."

The clear import of Hicks' testimony is that some of the information including the legal description and $500 per acre was written in before he met with Knight to get the listing signed and that at the time the listing was signed, he' changed the $500 figure to $512.50 at Knight's direction. According to Hicks' testimony, all of the essential elements of a valid listing agreement were written in the agreement at the time it was signed by Knight. We do not agree with defendant's contention that the uncontroverted evidence shows that the instrument in question did not contain all of the elements of an enforceable agreement to pay a real estate commission at the time it was signed.

Defendant further contends that he is entitled to judgment as a matter of law because plaintiff did not advise the purchaser as required by the portion of Article 6573a, § 28, V.A.C.S., which follows:

"At the time of the execution of any contract of sale of any real estate in this State, the Real Estate Salesman, Real Estate Broker, Real Estate Agent or Realtor shall advise the purchaser or purchasers, in writing, that such purchaser or purchasers should have the abstract covering the real estate which is the subject of the contract examined by an attorney of the purchaser's own selection, or that such purchaser or purchasers should be furnished with or obtain a policy of title insurance; and provided further, that failure to so advise as hereinabove set out shall preclude the payment of or recovery of any commission agreed to be paid on such sale."

■ Neither appellant nor appellee has cited a case construing this statutory provision. It is the duty of the court to give a statute a reasonable construction consistent with general principles of law and where an adherence to the strict letter of the statute would lead to injustice or absurdity, the duty devolves on the court to ascertain the true meaning consistent with the purposes to be accomplished. Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S. W.2d 929, 934 (1935).

■ The requirement that the written notice be given *at the time of the execution* of any contract of sale of any real estate evinces the statutory intent that the provision apply where the broker charged with the obligation to give such notice has an opportunity to participate in or be

present at the execution of the contract of sale.

In the case before us the seller, Knight, dealt directly with the buyer, Joe Bob Johnson, without notifying the broker, Hicks. It was Knight's intention to close the transaction without Hicks' participation and not to pay a commission. The court in West Realty & Investment Co. v. Hite, 283 S.W. 481, 482 (Tex.Comm'n App.1926, jdgmt. adopted), although dealing with a different problem, stated the principle of law applicable here as follows:

"The law will not permit the owner to deny to the broker his right to recover a commission where the broker himself has fully complied as far as possible, and where his only dereliction is produced entirely through the fault of the owner himself."

We hold that where the broker would otherwise be entitled to recover a commission, he will not be denied recovery solely because of a failure to advise the purchaser in writing at the time of the execution of the sales contract to have the abstract examined or to obtain a title policy as required by Art. 6573a, § 28, V.A.C.S., if he is precluded from doing so by the act of the seller in dealing directly with the buyer.

■ Defendant asserts in his final point of error that the trial court erred in failing to instruct the jury not to consider that portion of the listing agreement reading:

"I agree to pay the above Realtor a commission of FIVE per cent of the gross sale price (or the recommended schedule on exchange commissions) where this property or any portion is sold or exchanged by the Realtor, myself, or any other person, during the terms of this contract, or any extension thereof."

This provision is a part of the printed portion of the instrument signed by defendant and relied upon by plaintiff for recovery. It includes the contractual provision setting out the amount of commission to be paid and was properly admitted in evidence and before the jury for their consideration.

We recognize that plaintiff does not seek to recover under any wording that would bind the owner to pay a commission on a sale made by the owner himself. Hicks seeks to recover only if he is the procuring cause of the sale. In this respect, there is no indication that the commission clause set out above influenced the jury in answering the issues insofar as it provides for a payment of commission on a sale by the owner himself. In fact, in answering one special issue, the jury found that the parties had agreed that Knight retained a right to sell the property himself, without becoming obligated to pay a commission for such a sale.

■ Even if it were error not to instruct the jury as requested, the burden is on the defendant to show that the failure was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. Duncan v. Smith, 393 S.W.2d 798, 804 (Tex.1965). After careful review of the evidence pertaining to the issues submitted and the jury's answers, we do not find that there was probable harm from a failure to give the requested instruction.

The judgment of the trial court is affirmed.

MOTION FOR REHEARING

■ In his motion for rehearing, appellant contends that the jury's finding that Hicks was the procuring cause of the sale by Knight to Joe Bob Johnson must be predicated on a conclusion that Herschel Johnson was acting as agent for Joe Bob Johnson in conducting the negotiations in question and that such a conclusion in turn would necessarily be based solely on statements which appellee testified Herschel Johnson made to him concerning Her-

schel's purpose in looking for the land. In this connection, appellant cites the rule that mere declarations of an alleged agent, standing alone, are incompetent to establish either the existence of the alleged agency or the scope and extent of the alleged agent's authority. This principle is fundamental and well established. Latham v. Pledger, 11 Tex. 439, 446 (1854); Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 769 (1940). However, that principle does not apply to the facts of the case before us.

The question here is whether Joe Bob Johnson's interest and involvement in the negotiations with Hicks were such as to make Hicks' efforts the procuring cause of the sale in question. Joe Bob Johnson, himself, testified that he was the one interested in the purchase of the Fleming land which he and his father, Herschel, looked at as a result of Herschel Johnson's inquiry of Hicks concerning a place for Joe Bob to buy. Hicks testified that Joe Bob was present during the conversation at the barn when the possibility of Hicks getting a listing on the Knight land was discussed, as well as Joe Bob's possible participation in the purchase; that he, Hicks, personally told Joe Bob that he had the listing on the Knight land shortly after he got the oral listing; and that he, Hicks, told Knight that Joe Bob was interested in the negotiations that he, Hicks, was conducting before Knight ever discussed sale of the land with Joe Bob. It is undisputed that Herschel Johnson and Joe Bob Johnson both went with Knight to the lawyer's office to prepare the contract of sale, and that Hicks was not present at either the preparation or execution of the sales contract.

Even though there is some conflict in the evidence and there is testimony from which the jury could have reached a different conclusion, the jury, as trier of the facts, found that Hicks was the procuring cause of the sale from Knight to Joe Bob Johnson. We have again reviewed the evidence in its entirety, including that in conflict with that which supports this jury finding, and hold that the evidence is sufficient to support the jury's finding and that that finding is not against the great weight and preponderance of the evidence. Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295 (1916), 195 S.W. 848 (1917) and Shepard v. Wesson, 266 S.W.2d 393 (Tex.Civ. App.—Amarillo 1953, no writ).

The remaining points of error contained in the motion for rehearing have been carefully considered. We conclude that a correct and adequate disposition of each point was made in the original opinion.

The motion for rehearing is overruled.