W. H. AMES et al., Appellants,

v.

TEXAS GULF INDUSTRIES, INC., et al.,
Appellees.

No. 7785.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 24, 1967.

J. Edwin Smith, Houston, for appellants.

Tom M. Davis, Baker, Botts, Shepherd & Coates, Houston, for appellees.

FANNING, Justice.

W. H. Ames and Carl D. Smith, real estate brokers, doing business as Greater Houston Properties, sued Texas Gulf Industries, Inc., and Robert C. Lanier, for damages for alleged breach of an oral contract.

At the conclusion of plaintiffs' evidence, the trial court withdrew the case from the jury and entered judgment that plaintiffs take nothing. Plaintiffs-appellants have appealed.

Appellants present five points on appeal where they contend to the effect that the trial court erred in withdrawing the case from the jury because (1) the action was not one for real estate commissions, (2) the action was not for an interest in real estate, (3) that the action was for compensation for personal services and damages for breach of an oral contract for the development and promotion of a real estate subdivision, (4) that the evidence raised the

issue that the appellants entered into a valid and binding oral contract with Robert C. Lanier for the development, promotion and sale of land, and (5) that under the evidence the oral contract in question was not prohibited by the Statute of Frauds nor by the Real Estate Broker Act.

Plaintiffs-appellants' pleading with respect to the alleged oral agreement was as follows:

"On or about August 9, 1963, the Plaintiffs and the Defendants entered into a contract agreement for the development, promotion and sale of approximately 1,929 acres of land in the Josiah Dunn Survey, Waller and Grimes Counties, Texas, and entered into a joint enterprise for this project. Under the agreement the Plaintiffs agreed to and did invest substantial monies and agreed to and did invest their skill, time, labor, judgment and enterprise. The Defendants invested the land involved.

"Under the agreement, contract and joint enterprise the Plaintiffs were to have 10 per cent of the gross proceeds of any sale of the land or any part thereof."

Appellees' position is in essence to the effect that appellants were real estate brokers who had no written promise, agreement or memorandum covering a commission as required by Vernon's Ann. Tex.Rev.Civ.Stat. Article 6573a, § 28, and by their suit were attempting to recover a 10% commission for land they did not sell, by the device of applying a different nomenclature thereto, and that the undisputed evidence shows that appellants at all times material hereto were acting as real estate brokers, operating from their own office serving clients other than appellees, that the undisputed evidence shows that appellants were not employees of appellees, and that the undisputed evidence also shows that the elements to create a joint venture under Texas Law were wholly lacking here, that appellants contributed nothing to the purchase price

of the land, had no interest therein, and that under the undisputed evidence the trial court correctly sustained appellees' motion for instructed verdict and correctly entered judgment for appellees.

Prior to August 9, 1963, the 1929 acres of land involved herein belonged to Walker, Griffin and Petty, residents of Montgomery County, Texas. Walker, a real estate broker, had an exclusive listing on the land and authorized appellants to sell it at $160.00 per acre. Appellants attempted to sell the land to various persons, including appellee Lanier. Following negotiations on August 9th and 10th, 1963, Lanier contracted to buy the property for $150.00 per acre. Later Lanier assigned his interest in the contract to Texas Gulf Industries, Inc., the other appellee, a corporation which was largely controlled by Lanier, its President and largest stockholder, and this corporation consummated the purchase on November 14, 1963. The corporation had notice of the alleged claims and demands of appellants.

Although appellants were instructed by the owners to try to sell the property for $160.00 per acre, they advised Lanier that they thought he could buy it for $150.00 per acre and appellants requested Lanier to pay them a 2½% commission. According to appellants, Lanier agreed to pay this commission, but this alleged agreement was not in writing. Lanier denied having made any agreement with appellants to pay them a 2½% commission.

The written purchase agreement with respect to the 1929 acres of land is signed by the three owners as seller, by Lanier as purchaser, and by appellant Ames for Greater Houston Properties, as agents. Article VIII of the agreement provides that appellants "are acting as seller's agents in this transaction, and for such services * * shall be paid by seller a seller's commission of two and one-half per cent (2½%) of the total purchase price to be paid under the terms hereof." Neither this instrument nor any other written instrument provides

for any commission to be paid by Lanier to appellants.

While the sale of the property was being discussed and before Lanier agreed to purchase it, Ames, Smith and Lanier considered the resale of the property. Appellants talked to Lanier about the possibilities and prospects of the land being resold by him under the Veterans Land Program for $350.00 per acre. Lanier testified to the effect that he told appellants to forget about their request for a 2½% commission incident to his purchase of the land, but that if they could sell the land under the Veterans Land Program for $350.00 per acre, and if appellants would cooperate with other brokers in selling the property and pay the advertising expense, he would pay them a 10% commission as the real estate agents with the understanding that no commission would be due appellants on such sales as Lanier might make to some of his friends. Appellants, on the contrary, contend to the effect that a verbal agreement was made by Lanier for them to have "a 10% working interest", meaning 10% of the gross proceeds from the resale of the property. When asked what the difference was between the 10% that he and Smith claimed and a 10% commission, Ames testified: "I assume, sir, that at the moment it doesn't involve anything more than a play on words, but we did not consider it a commission in the sense that we ordinarily just handle and sell a piece of property."

It is clearly undisputed in the record that the alleged agreement was not reduced to writing, nor was there any memorandum evidencing the same signed by appellees, or either of them.

Article I of the original written purchase agreement between Lanier and the sellers of the 1929 acres, wherein appellants were real estate brokers and agents for the sellers, required Lanier to put up $10,000.00 earnest money and Article VIII provided that if the earnest money was forfeited, seller would pay appellants, as agents, 50% thereof. Lanier testified to the effect that when appellants first presented the purchase agreement to him, he told them that he would not agree to their getting $5,000.00 of the earnest money if he signed the agreement and thereafter did not go through with the purchase. Appellants agreed with Lanier that if the earnest money was forfeited, they would return to him the $5,000.-00 which they would get under Article VIII. Later that agreement was reduced to writing, signed by appellants and delivered to Lanier.

Appellant Ames testified to the effect that the agreement to waive appellants' part of the earnest money in the event Lanier did not go through with the purchase was part of the inducement to get Lanier to agree to buy the land. The sale of the 1929 acres was consummated by Texas Gulf Industries, Inc., the corporation of which Lanier was President, hence the earnest money was not forfeited, and appellants received their commission from the seller for the sale of the land.

After Texas Gulf Industries, Inc., purchased the land in question, appellants did not make any sales of any portions of same. When Lanier had a prospective purchaser for the property he called appellants and told them of the prospect and gave them a specified period of time in which to produce a purchaser if they could. Appellants did not produce any purchaser or anyone willing to enter into a contract to purchase. Thereafter, Lanier personally sold all of the land for a profit. Appellants made demands for their alleged 10% prior to the closing of such sales and appellees have refused all of such demands.

After carefully reviewing and analyzing all of the evidence adduced by appellants we have reached the following conclusions:

1. The evidence is undisputed that appellants did not contribute anything toward the purchase of the 1929 acres in question.

2. The evidence is undisputed that appellants were real estate brokers and were not employees of appellees.

3. The evidence is undisputed that the control of all transactions concerning the disposition of the land was exclusively in Lanier and his corporation, and that appellants were not obligated to share any losses which Lanier or the corporation might sustain in acquiring, developing and thereafter disposing of the property.

4. The evidence is undisputed that neither Lanier nor appellee corporation signed any character of written agreement or memorandum covering a commission in favor of appellant real estate brokers, as required by Tex.Rev.Civ.Stat.Ann., Article 6573a, § 28.

It is clear that appellants not having contributed anything to the purchase price of the land in question owned no interest therein, and in fact they have not claimed, and do not claim, any interest in the land.

■ We hold that under the undisputed evidence in the record that appellants, who had no control over the disposition of the land and who were not obligated to share in any losses which Lanier or the corporation might suffer in the acquisition, development and thereafter selling or disposing of the land, were not joint adventurers with appellees in the acquisition, development and sale of the land. In this connection see the following authorities: Holcombe v. Lorino, 124 Tex. 446, 79 S.W. 2d 307 (1935); Luling Oil & Gas Co. v. Humble Oil & Refining Company, 144 Tex. 475, 191 S.W.2d 716 (1946); Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956).

■ It is our further view that the alleged oral agreement which appellants testified to, actually amounted to nothing more than a verbal listing with them, as real estate brokers, of the property in question, to be sold for a 10% commission, out of which appellants were to bear advertising, sales and some of the promotional expenses. We hold that such verbal agreement was not enforceable by reason of the provisions of Sec. 28 of Article 6573a, Tex.Rev.Civ. Stat.Ann., which reads in part as follows:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

Also in this connection see the following authorities: Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946); Jackson v. Key, Tex.Civ.App., 223 S.W.2d 717, writ ref'd (1949); Great Western Drilling Company v. Simmons, 157 Tex. 268, 302 S.W.2d 400 (1957).

The case of Berne v. Keith, Tex.Civ. App., 361 S.W.2d 592, writ ref'd, n. r. e. (1962), relied on by appellants, is not in point as appellants in this cause were not employees of appellees but were real estate brokers.

The case of Palmetto Lumber Company v. Gibbs, Tex.Civ.App., 52 S.W.2d 120 (1932), affirmed 124 Tex. 615, 80 S.W.2d 742, 124 Tex. 615, 82 S.W.2d 376, relied on by appellants, involved a joint venture and is not in point because under the undisputed evidence in the case at bar appellants and appellees were not joint adventurers.

The case of Newton v. Gardner, Tex. Civ.App., 225 S.W.2d 598, writ ref'd, n. r. e., (1949), relied on by appellants, involved a suit by plaintiff to obtain an interest in oil and gas leases. In such case the court held that there was an oral agreement between plaintiff and one of the defendants for future joint acquisition of leases in the defendant's name, with an understanding that plaintiff would have an overriding royalty interest and such an agreement was not within the Statute of Frauds. This case is clearly distinguishable from the facts in the case at bar.

The case of Martin v. Morrison, Tex. Civ.App., 260 S.W. 893, writ dism'd, (1924), relied on by appellants, is distinguishable because it involved a joint venture, and as hereinbefore held in the case at bar, no joint adventure was involved here.

Finding that the trial court entered a correct judgment, said judgment is accordingly affirmed.

Affirmed.