**Charles BRICE, Appellant,**

v.

**Chester D. EASTIN, Appellee.**

**No. 04–83–00433–CV.**

Court of Appeals of Texas, San Antonio.

April 24, 1985.

James D. Coffee, San Antonio, for appellant.

Frank Y. Hill, Boerne, for appellee.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from the granting of a directed verdict in favor of Chester D. Eas-tin. The sole issue is whether appellant, Charles Brice, a real estate broker, complied with the statute of frauds applicable to real estate commissions. TEX.REV. CIV.STAT.ANN. art. 6573a, § 20(b) (Vernon Supp.1985).

In February, 1981, Brice learned that Eastin had a ranch for sale. Brice telephoned Eastin and discussed the sale of the property. Brice testified that he told Eastin he was in the real estate business, and his commission fee, if he procured a buyer, was five percent. Brice testified that Eastin agreed to the commission amount. The two men met a few days later and Eastin gave Brice various plats, aerial photographs, mineral contracts, a key to the property, and other material pertinent to the sale of the ranch. Brice alleges he requested Eastin sign a listing agreement at this first meeting but Eastin refused because he had difficulties with another broker at a prior time. Brice maintains that Eastin did, however, agree to the five percent commission.

Eastin denies that he ever agreed to pay a commission fee. He testified that initially he didn't even know that Brice was a real estate broker. Although Eastin remembered Brice mentioning a five percent figure for a real estate fee, Eastin testified that he told Brice they would approach that problem when Brice procured a buyer.

Brice listed the property in numerous publications and called other brokers. He drove several prospective buyers to the ranch to view the property. John Blanton of Dallas responded to one of the advertisements Brice had placed in a newspaper. After showing the ranch to Blanton, Brice prepared, at Blanton's request, a farm and ranch earnest money contract. Brice sent this contract to Blanton after Blanton returned to Dallas. Blanton signed it and returned it to Brice. Brice took the contract to Eastin who read it over and changed all items with which he disagreed, initialing each change. Eastin made no change in the paragraph providing for a five percent professional service fee to the

broker. Although Eastin initialed the changes he made on the contract, he did not sign it.

Several days later when Brice went to Eastin's office, Eastin told him that he had sold the property to someone else. Brice requested Eastin give Blanton an opportunity to make another offer on the ranch as Blanton's initial offer had preceded all other offers. Eastin talked with his attorney, Frank Hill, and then instructed Brice to take the contract to Hill in Boerne, Texas. Hill drew up another contract which Brice sent to Blanton. There followed several exchanges of contracts between Blanton and Eastin with Brice serving as a middleman for the exchanges and Hill acting as Eastin's attorney.

The final earnest money contract was signed by Eastin and Blanton and prepared by Frank Hill. This final contract was the sole contract not picked up and sent to Blanton by Brice because Brice was on a business trip. In his absence, Hill sent the contract directly to Blanton. When Brice returned from his trip, Hill told him that a contract had been signed by both parties but he felt Brice should split the five percent commission with him. Brice called Eastin immediately and Eastin told Brice he had signed the contract but was going to change the commission to 2½% and give the remaining 2½% to Hill. Brice testified that Eastin said he would sell the ranch property to another party if Brice didn't agree to the 2½% commission.

The earnest money contract contained a sentence which after preparation by Hill read: "Charles Brice, Sr. [typed] as Real Estate Agent, has negotiated this sale and Seller agrees to pay such Agent a 5 [typed] % commission upon closing." When Eastin received the contract he altered the commission figure. On the contract as executed the typed numeral "5" is crossed through with blue pen and the number "2½" is inserted in the blank. Eastin's initials appear beside the change. The contract was sent to Blanton, the purchaser, in this altered form.

Eastin paid Brice a 2½% commission. Brice brought suit for the remaining 2½% commission.

Trial was before a jury. At the close of plaintiff's case and outside the presence of the jury, Eastin moved for a directed verdict. Eastin maintained that Brice failed to make out a *prima facie* case because Brice failed to produce an instrument which complies with the statute of frauds applicable to real estate commissions, article 6573a, section 20(b) of Texas Revised Civil Statutes. The motion was granted and the court decreed Brice take-nothing by his suit.

Brice brings forth points of error asserting that the court erred in granting the directed verdict because the doctrine of part performance removes the agreement from the statute of frauds or, alternatively, there was a material fact issue raised by the evidence as to whether or not there had been a writing signed by Eastin providing for a five percent commission.

Article 6573a is the Texas Real Estate License Act. Section 20(b) provides:

An action may not be brought in a court in this State for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it.

We disagree with the contention that part performance would remove the transaction from under the operation of this statute. The cases cited by Brice in support of application of the doctrine, *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961); *Teague v. Roper*, 526 S.W.2d 291 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *Ojeda v. Ojeda*, 461 S.W.2d 487 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.), are all cases dealing with the general statute of frauds for transfers of real estate, TEX.BUS. & COM.CODE ANN. § 26.-01 (Vernon Supp.1985), or its predecessor, TEX.REV.CIV.STAT.ANN. art. 3995 (Vernon 1966).

The doctrine of part performance, under the general statute, developed as a protection to a purchaser of land who, in reliance upon an oral contract, paid consideration, took possession of the realty and/or made valuable improvements upon the land. It was considered inequitable to allow a seller to plead the statute of frauds when the performance and reliance of the buyer clearly demonstrated the existence of an agreement, albeit oral, with the seller. *See Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286, 289–90 (1957); *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921); *Winchester Oil Co. v. Glass,* 683 S.W.2d 35, 38 (Tex.App.—Texarkana 1984, no writ).

■ However, the statute of frauds within the Real Estate License Act was designed to protect the landowner from the imposition of false claims by real estate brokers. *Dunn v. Slemons,* 165 S.W.2d 203, 206 (Tex.Civ.App.—Amarillo 1942, no writ). We find no cases applying the doctrine of part performance to defeat the statute of frauds for real estate commissions. The equitable justifications are not present in the context of brokers and salesmen licensed to practice real estate. Knowledge of the necessity of a written agreement in order to bring an action in court to collect a real estate commission can be imputed to such individuals.

■ Brice also argues that he proved, or at least created a fact issue, as to the existence of a writing, signed by Eastin and referring to a five percent commission. We cannot agree. The only instrument in evidence signed by Eastin is the final earnest money contract prepared by Eastin's attorney.

On this document, Eastin marked through the five percent commission figure and inserted "2½". There is, therefore, no existing writing of a promise or agreement to pay a five percent commission. Brice asserts that Eastin first signed the contract with the five percent figure and later changed it to 2½%. The sequence of the two events, signing the contract and crossing out 5% and inserting 2½%, is immaterial. So long as the contract remained in Eastin's possession and delivery to Blanton had not been effected, Eastin was free to alter any provision on the contract. As to Blanton, any alteration would constitute a counteroffer.

Brice also argues that he did not agree to the change in the commission figure and Eastin could not unilaterally change the figure. Yet Brice did not plead or prove fraud by Eastin.

■ Strict compliance with the Real Estate License Act is required. *Hall v. Hard,* 160 Tex. 565, 335 S.W.2d 584, 589 (1960); *Henry S. Miller Co. v. Treo Enterprises,* 573 S.W.2d 553, 555 (Tex.Civ.App.—Texarkana 1978), *affirmed,* 585 S.W.2d 674 (Tex.1979). The agreement to pay a real estate commission must be in writing or it is not enforceable. *Denman v. Hall,* 144 Tex. 633, 193 S.W.2d 515, 516 (1946); *Wolf v. Faubion,* 278 S.W.2d 951, 953 (Tex.Civ.App.—Waco 1955, no writ). The mere fact that Brice procured the buyer is not sufficient to enable him to recover a commission in absence of a contract in writing signed by Eastin. *See Randolph v. Chester Cary & Neches Title & Trust Co.,* 406 S.W.2d 551 (Tex.Civ.App.—Beaumont 1966, no writ); *Dunn v. Slemans,* 165 S.W.2d at 206.

The judgment of the trial court is affirmed.