Chester LATHEM, Appellant

v.

William R. KRUSE and Walking
T. Ranch, L.P., Appellees.

No. 05–08–00394–CV.

Court of Appeals of Texas,
Dallas.

July 2, 2009.

Cary I. Schachter, Schachter & Harris, LLP, Raymond P. Harris, Jr., Conant Whittenburg Whittenburg & Schachter, Dallas, TX, for Appellant.

Andrew G. Jubinsky, Figari & Davenport, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

Appellant Chester Lathem, a real estate broker, sued William R. Kruse and Walk-ing T. Ranch, L.P. (collectively, the Kruse parties)[1] claiming an interest in the profits from the sale of a real estate development. The trial court granted the Kruse parties' motion for summary judgment based on the statute of frauds provision of the Real Estate License Act (RELA). *See* Tex. Occ.Code Ann. § 1101.806(c) (Vernon 2004). On appeal Lathem asserts that provision does not apply here; alternatively, he asserts he raised a fact issue as to the affirmative defense of partial performance. We affirm.

## STANDARD OF REVIEW

Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We examine the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion in the non-movant's favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex.2005). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex.R. Civ. P. 166a(c).

In this case, the Kruse parties had the burden to show they were entitled to summary judgment by pleading and proving all elements of their affirmative defense.

---

1. Lathem's live pleading below, his First Amended Original Petition, also named Kruse Farms and Kruse Farms, LP as defendants. Lathem says in his brief that these defendants were not served with citation before summary judgment was granted. *See* Tex.R.App. P. 38.1(f) (in civil case, court accepts as true facts stated unless another party contradicts them.). *See also M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674 (Tex.2004) (per curiam) (discussing finality of summary judgment when one party not served). Thus, Kruse Farms and Kruse Farms, LP are not parties to this appeal.

*See Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). *See also* Tex.R. Civ. P. 94 (statute of frauds is affirmative defense); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999) ("A defendant moving for summary judgment on [an] affirmative defense ... has the burden to conclusively establish that defense."). If the Kruse parties established their asserted affirmative defense of the statute of frauds, the burden shifted to Lathem, the non-movant plaintiff, to show why summary judgment should not be granted. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

## BACKGROUND

We view the evidence, as we must, in the light most favorable to Lathem. In February 2001, Lathem brought Kruse and Dean Eldridge together in the purchase of a multi-acre tract of land. Kruse and Eldridge, or entities controlled by them, paid the purchase price. This property was the original tract of the South Pointe real estate development. Lathem expected to be paid a commission as a real estate broker or agent for putting together the deal. Lathem testified that, before the contract was signed, he told Kruse that his commission on the sale was $50,000, and Kruse asked him if he wanted to be paid in cash or to "leave it in" the deal. Lathem testified he chose to leave his money "in the deal"; that he considered his commission had been paid and it was "the consideration for [his] receiving a profits participation interest in the South Point venture"; and that he received a pro rata share of Kruse's interest. However, there was no written agreement signed by Kruse or a representative of Walking T. Ranch, L.P. documenting the $50,000 real estate commission or leaving that amount in the deal as a profits participation interest.

Nor was there such a written agreement including Lathem as a partner in the South Pointe joint venture.

Subsequently, Walking T. Ranch, L.P., of which Kruse was part of the general partner, acquired title to South Pointe. South Pointe was sold in 2006; after various costs were paid, the remainder was to be divided among the participants according to their profits participation interest. Lathem calculated that, based on the amount of money each contributed—including his claimed $50,000 interest—the overall profits from the sale of the South Pointe development should have been divided as follows: Eldridge 20%; Lathem 2.08%; and Kruse 77.92%. When Kruse declined to pay Lathem, Lathem sued the Kruse parties asserting, in his live pleading, causes of action for breach of contract and of fiduciary duty and requesting damages, an accounting, and a resulting trust.

The Kruse parties filed an answer generally denying the allegations. They filed a traditional motion for summary judgment, supported by evidence, asserting that Lathem's claims were an attempt to enforce an oral agreement to pay a real estate commission and were barred by section 1101.806(c). The summary judgment evidence included the contract for sale of the initial tract, paragraph 8 of which—entitled "broker's representation and fees"—provided that Lathem represented the buyer and "Buyer shall pay Broker the fee specified by separate agreement between Broker and Buyer." The Kruse parties also presented as summary judgment evidence statements in Lathem's deposition testimony that: the purchase of the original tract was ultimately the source of his claims and his interest in South Pointe; there was no written agreement signed by any Kruse party documenting

his $50,000 real estate commission; and that, instead of receiving a check for the $50,000 commission or writing a check for $50,000 "into the deal," his money stayed in the deal.[2] The Kruse parties also relied on Lathem's interrogatory response that the agreement for the joint venture was oral.

Lathem filed a response to the motion, supported by evidence, and a supplemental response. Lathem argued that his suit was not for the commission, but to enforce an oral agreement under which he acquired a profits participation interest in the South Pointe joint venture; that section 1101.806(c) did not apply because he did not measure his damages by the $50,000 commission earned in 2001 on the initial tract, but by South Pointe's sales price less all the development costs; and that the evidence raised a fact issue as to partial performance.

The Kruse parties filed a reply in support of their motion in which they addressed Lathem's arguments. The trial court granted the Kruse parties' motion and dismissed Lathem's claims with prejudice. This appeal followed.

## APPLICABLE LAW

■ Section 1101.806(c) provides:

A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC.CODE ANN. § 1101.806(c). To comply with this section, an agreement or memorandum must: (1) be in writing and must be signed by the person to be charged with the commission; (2) promise that a definite commission will be paid, or must refer to a written commission schedule; (3) state the name of the broker to whom the commission is to be paid; and (4) either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed. *Knight v. Hicks*, 505 S.W.2d 638, 642 (Tex. Civ.App.-Amarillo 1974, writ ref'd n.r.e.). Strict compliance with RELA is required; the agreement to pay a real estate commission must be in writing or it is not enforceable. *Brice v. Eastin*, 691 S.W.2d 54, 57 (Tex.App.-San Antonio 1985, no writ).

■ When RELA applies and its requirements are not met, courts have denied recovery when fraud, conspiracy, deceit, quantum meruit, and breach of contract have been pleaded. *McKellar v. Marsac*, 778 S.W.2d 573, 575 (Tex.App.-Houston [1st Dist.] 1989, no writ). *See*

---

2. Lathem responded "Correct" to the statement, "The sole basis of your claims is this $50,000 real estate commission that you claim you are owed and that you left in the deal." Lathem also testified in deposition:

Q: But, to your knowledge, Mr. Kruse or anyone on behalf of Kruse Farms never signed a document that said you would receive a $50,000 real estate commission as a result of this purchase [of the original tract]. Correct?

A: Correct.

Q: But in fact your testimony is there was such an agreement and you were to receive a $50,000 real estate commission for your work on this transaction. Correct?

A: That's correct. And I could either take the cash or put it in there with his percentage, or his part, and have a percentage of that.

*Trammell Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 634 (Tex.1997) (in broker's claim against lessors for tortious interference with exclusive representation agreement with lessees, claim rejected as "wholly derivative of [broker's] unenforceable oral commission agreement" and "translates only into the loss of the expectancy of receiving a commission at the end of the lease negotiations"). A broker "cannot do indirectly what the law says he cannot do directly." *Harkinson,* 944 S.W.2d at 634. Whether a contract falls within the statute of frauds is a question of law. *Vermont Info. Processing, Inc. v. Montana Beverage Corp.,* 227 S.W.3d 846, 853 (Tex.App.-El Paso 2007, no pet.)

## DISCUSSION

### Application of Section 1101.806(c)

As defendants moving for summary judgment based on section 1101.806(c), the Kruse parties had to prove that: (1) Lathem's suit is for the recovery of a commission for the sale or purchase of real estate, and (2) they signed no written promise, agreement, or memorandum to pay a commission. *See McKellar,* 778 S.W.2d at 576. In their motion, the Kruse parties argued that Lathem's real estate commission formed the basis for all of his claims in this suit; that it was undisputed that there was no written agreement signed by any Kruse party setting forth the terms of the obligation to pay Lathem the real estate commission; and that there was no written joint venture agreement that mentioned Lathem. They contended Lathem was attempting to avoid the statute of frauds by "bootstrapping" his commission claim into a claim for breach of an oral joint venture agreement.

Lathem acknowledges that paragraph 8 is insufficient to comply with section 1101.806(c) because it does not state the amount of the commission, that is, either $50,000 or a profits participation interest in the joint venture. *See Knight,* 505 S.W.2d at 642 (valid agreement or memorandum must, inter alia, promise that definite commission will be paid, or must refer to written commission schedule). Instead, in his first issue, Lathem challenges whether section 1101.806(c) applies to his claims. He argues his suit is for breach of a joint venture agreement concerning South Pointe, not for the recovery of a commission for the sale of the original tract.

The Kruse parties' argument relies primarily on *McKellar,* 778 S.W.2d at 576, and *Ames v. Texas Gulf Industries, Inc.,* 411 S.W.2d 779, 781–82 (Tex.Civ.App.-Texarkana 1967, no writ). In *McKellar,* a real estate broker alleged he and a property owner entered into an oral agreement to develop and sell the property, and the owner agreed to pay the broker a share of the ultimate proceeds from any development and sale of the land as compensation for the time and money the broker expended. *McKellar,* 778 S.W.2d at 574. The court determined that the evidence conclusively showed the broker was engaged in selling the property and expected to be paid a portion of the sale proceeds for his efforts. "Characterizing the sale of real estate as a joint venture activity, and labelling a commission as a share of the profits from the joint venture, makes the transaction described in this lawsuit no less a real estate sale for a commission" and within RELA's statute of frauds provision. *Id.* at 576.

In *Ames,* brokers were authorized by the owners to sell a certain property. They contracted to sell it to a buyer, but before that sale was complete, the brokers

and the buyer entered into an oral agreement to develop, promote, and sell the property. The brokers were to have ten percent of the gross proceeds—a ten percent "working interest"—of any subsequent sale of the property, which one of the brokers admitted was a ten percent commission. *Ames*, 411 S.W.2d at 781–82. After determining the brokers were not joint venturers, the court concluded that the oral agreement was a verbal listing of the property with the brokers for a ten percent commission, out of which the brokers were to pay sales and other expenses, and RELA statute of frauds applied. *Id.*

Lathem argues that the statute of frauds does not apply here because he is not suing for the $50,000 commission, but for an accounting, resulting trust, and damages as a participant in the South Pointe joint venture. Lathem distinguishes *Ames*, arguing this suit concerns a joint venture, not an oral listing agreement. Lathem also distinguishes *Harkinson*, and *McKellar*, arguing those cases did not concern a joint venture and a corroborative writing. He argues that the commission was paid when Kruse acknowledged his $50,000 commission in 2001 and agreed to Lathem's investing in the joint venture.

■ But the test is whether Lathem is seeking recovery of compensation due for rendition of services governed by RELA, regardless of the form that compensation took. *See McKellar*, 778 S.W.2d at 575 (citing *Cook v. City of Plano*, 656 S.W.2d 607, 608 (Tex.App.-Dallas 1983, writ ref'd n.r.e.)). We consider the substance, not the form, of the contract at issue. *See id.* (citing *Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 676–77 (Tex.1979)).

■ Here, as did the real estate brokers in *McKellar* and *Ames*, Lathem entered into an oral agreement to be paid a commission measured as a percentage of the proceeds of the ultimate sale of property for which he provided broker services. It is undisputed Lathem did not provide any part of the purchase price of the original tract, and he does not claim to own an interest in the land. *See Ames*, 411 S.W.2d at 782.

Viewing the evidence in Lathem's favor, the record shows that the initial oral agreement for a $50,000 commission was modified when Lathem and Kruse orally agreed Lathem's compensation due for rendition of broker services was a profits partnership interest in the joint venture. Thus, although Lathem is not seeking $50,000, the basis of his share of the profits of the joint venture is a commission arising from the sale of real property. As expressed in *Harkinson*, Lathem's claim for breach of the oral joint venture agreement is "wholly derivative" of his unenforceable oral commission agreement and "translates only" into the loss of the expectancy of a commission agreed to as an interest in the profits of South Pointe's sale. *See Harkinson*, 944 S.W.2d at 634. We conclude the evidence conclusively establishes that Lathem's suit is for the recovery of a commission for the sale of the original tract and is therefore governed by section 1101.806(c). *See McKellar*, 778 S.W.2d at 576; *Ames* 411 S.W.2d at 782. We resolve Lathem's first issue against him.

### Application of Partial Performance Doctrine

■ Because the Kruse parties conclusively proved their statute of frauds affirmative defense, *see McKellar*, 778 S.W.2d at 576; *Knight*, 505 S.W.2d at 642, the burden shifted to Lathem to show why

summary judgment should not be granted. *See Casso*, 776 S.W.2d at 556. In his second issue, Lathem argues that, even assuming section 1101.806(c) applies here, a fact issue exists under the doctrine of partial performance that would make the oral agreement regarding the real estate commission enforceable.

Lathem relies on *Carmack v. Beltway Development Co.*, 701 S.W.2d 37 (Tex. App.-Dallas 1985, no writ), in which this Court applied the partial performance doctrine in a RELA statute of frauds case. However, in *Carmack*, the broker's commission agreement lacked only a precise identification of the property. After reviewing the "well-recognized" partial performance exception to the general statute of frauds, we observed, "When one party fully performs a contract, the Statute of Frauds may be unavailable to the other party if he knowingly accepts the benefits and partly performs." *Id.* at 40. We limited our decision to the holding that under the doctrine of partial performance a written real estate commission agreement that failed to describe the property with precision may be enforced by the broker notwithstanding RELA's statute of frauds when: (1) the broker has fully performed; (2) the other party has knowingly accepted the broker's services by completing the transaction arranged by the broker and receiving benefits from that transaction; (3) the other party has acknowledged in writing his obligation for a commission; and (4) documentary evidence establishes the amount of the commission due. *Id.* at 41–42; *see Collins v. Beste*, 840 S.W.2d 788, 792 (Tex.App.-Fort Worth 1992, writ denied). *But see Harkinson*, 944 S.W.2d at 636 ("We consistently have refused to erode [RELA's statute of fraud provision] with the same exceptions as may render oral contracts within the general statute of frauds enforceable."); *Boyert v. Tauber*, 834 S.W.2d 60, 63–64 (Tex.1992) ("Allowing a broker to recover on the ground of his performance alone would permit enforcement of any commission agreement fully performed by the broker whether or not it complies with [RELA]."); *Brice*, 691 S.W.2d at 57 ("We find no cases applying the doctrine of part performance to defeat the statute of frauds for real estate commissions."). We relied on documentary evidence to supply the identification of the property. *Carmack*, 701 S.W.2d at 41.

Here, however, to raise a fact issue as to partial performance, Lathem would have had to present "affirmative corroboration . . . by both parties" of the missing terms. *See Boyert*, 834 S.W.2d at 63. Lathem argues the following evidence of corroboration supplies the missing term of the amount of commission due: the February 2001 oral joint venture agreement; Kruse's deposition testimony that South Pointe was a partnership; and Lathem's deposition and affidavit testimony that Kruse treated him "as if" he had an interest, reporting to Lathem on the venture and offering, through Eldridge, to buy out Lathem's interest in 2006.

The oral joint venture agreement is not corroborated by anything other than Lathem's testimony that it existed. A "draft" profits participation agreement setting out an agreement by Kruse to pay Lathem a commission of $50,000 plus a profits participation interest equal to 2.6% of the net profits was not signed by Kruse. Kruse's deposition testimony does not present affirmative corroboration of Lathem's profits participation interest because Kruse said he and Lathem "never talked about a joint venture on any of these properties" and Kruse said he never talked with Lathem about owing him a

929

commission for the original tract. Kruse said he believed that Eldridge had agreed to "take care of" Lathem.

Lathem's deposition and affidavit testimony does not address any corroboration by Kruse of the missing term, that is, the amount of compensation due for broker services as to the original tract measured as a profits participation interest. Kruse may have treated Lathem as if Lathem had an interest, but "reporting to [Lathem] on the affairs of the South Pointe venture" and offering to buy out Lathem's interest in the venture, without more, is not corroboration by Kruse of the value of that interest. *See Boyert*, 834 S.W.2d at 63 (requiring "affirmative corroboration … by both parties" of missing terms to establish partial performance to enforce alleged oral agreement). Thus, assuming without deciding that the doctrine of partial performance as applied in *Carmack* also applies here, we conclude Lathem failed to bring forth evidence raising a fact issue. We resolve Lathem's second issue against him.

## CONCLUSION

Having resolved Lathem's two issues against him, we conclude the trial court did not err in granting summary judgment in the Kruse parties' favor. We affirm the trial court's order granting the Kruse's parties' motion for summary judgment.