**LITTON LOAN SERVICING, LP, Appellant,**

v.

**Zachariah MANNING and Intrarealty, Inc. d/b/a Intrarealty, Appellees.**

**No. 05–10–00675–CV.**

Court of Appeals of Texas, Dallas.

April 26, 2012.

---

**2.** *Id.* (internal citations and quotation marks omitted).

Sean Michael Reagan, Steven A. Leyh, Brandon Seth Payne, Leyh & Payne, LLP, Houston, TX, Kirsten M. Castaneda, Locke Lord Bissell & Liddell LLP, Thomas G. Yoxall, Locke Liddell & Sapp LLP, Dallas, TX, for Appellant.

Robert J. Reagan, Monica I. Garcia, Reagan McLain Lee & Hatch, LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, FILLMORE, and MYERS.

## OPINION

Opinion By Justice MYERS.

Litton Loan Servicing, LP appeals the trial court's judgment awarding Zachariah Manning and IntraRealty, Inc. d/b/a IntraRealty a real estate commission on residential property that did not sell. Appellant brings five issues asserting the trial court erred in disregarding a finding that appellant was not at fault for the failure to close on the property and that the evidence is legally and factually insufficient to support the judgment. We conclude the evidence is legally insufficient to show there was a contract to pay appellees a commission that complied with the Real Estate License Act. We reverse the trial court's judgment and render judgment that appellees take nothing.

## BACKGROUND

Appellees are licensed real estate brokers. In 2006, appellees accepted a listing from HomeEq, a mortgage servicer acting as agent for the property owner, to sell the home at issue in this case. Appellees received several offers on the property, which they passed on to HomeEq. HomeEq accepted an offer from Karen Vicknair for $195,000. While that contract was pending, HomeEq transferred management of the property to Litton. Appellees did not have a standing commission agreement with Litton.

The real estate contract with Vicknair originally scheduled the closing for March 23, 2007. The closing was delayed when Litton had difficulty collecting the documents to establish good title. Manning helped clear up the title issue, and the closing was rescheduled for April 27. However, Litton was unable to close because it did not have the correct person to sign the deed. When Litton was unable to close by April 27, Vicknair terminated the contract and received the return of her earnest money. Appellees then sent appellant a letter demanding a commission of $11,500 because they had produced a ready, willing, and able buyer. Litton refused to pay the commission because the property had not sold. Appellees then brought this lawsuit for payment of the commission.

Appellees alleged causes of action for breach of contract and negligent misrepresentation. Appellant answered, raising the affirmative defense the contract was subject to the statute of frauds and was not in writing or signed by appellant.

The case proceeded to a jury trial. The trial court rendered judgment for appellees for the $11,700 real estate commission plus $30,000 for attorney's fees. The court then made findings of fact and conclusions of law concluding that a series of e-mails

around March 7, 2007 constituted a legally binding contract for Litton to pay appellees a commission of $11,700 for producing a ready, willing, and able cash buyer for the property.

## STATUTE OF FRAUDS

In its third issue, Litton contends the evidence is legally and factually insufficient to support a finding that a written agreement existed that complied with the statute of frauds provision of the Real Estate License Act (RELA). In reviewing the legal sufficiency of the evidence, we consider all the evidence before the jury, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.-Dallas 2011, no pet.). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the evidence furnishes a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence, more than a scintilla, to support the fact. *Id.*

The statute of frauds provision of RELA provides,

A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC.CODE ANN. § 1101.806(c) (West 2012). To comply with this section, an agreement or memorandum must: (1) be in writing and must be signed by the person to be charged with the commission; (2) promise that a definite commission will be paid, or must refer to a written commission schedule; (3) state the name of the broker to whom the commission is to be paid; and (4) either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed. *Lathem v. Kruse*, 290 S.W.3d 922, 925 (Tex.App.-Dallas 2009, no pet.). Strict compliance with RELA is required; the agreement to pay a real estate commission must be in writing or it is not enforceable. *Id.* The essential elements of the agreement may not be supplied by parol evidence. *Boyert v. Tauber*, 834 S.W.2d 60, 62 (Tex.1992).

In this case, appellees relied on five exhibits as forming the contract for payment of a real estate commission. Plaintiff's exhibit 1 was an e-mail dated March 7, 2007 from "stefanie.otto@litton.c-bass. com" and addressed to "<list@intrarealty. com>," with the subject of "Accepted Offer." The body of the e-mail identified a file number, the property address, and "Borrower Name." It then stated,

Stefanie Otto has ACCEPTED the following offer information:

| | |
|---|---|
| Buyer Name: | Karen Vicknair |
| Sales Price: | $195,000.00 |
| Total Commission: | $11,700.00 |
| Buyers Closing Costs: | $0.00 |
| Contract Repairs: | $0.00 |
| Termite Completion: | $0.00 |
| Miscellaneous Costs: | $0.00 |
| Earnest Money: | $1,850.00 |
| Scheduled Close Date: | 3/23/2007 |

Please contact your Asset Manager if you have any questions.

Thank you!

Appellees argue this e-mail constitutes a signed writing under the Uniform Electronic Transactions Act that meets the requirements of RELA. *See* TEX. BUS. & COM.CODE ANN. §§ 322.002(8), .007(c), (d) (West 2009); TEX. OCC.CODE ANN. § 1101.806(c). We disagree. The document identifies an amount as "Commission," but it does not identify the broker to whom the commission is to be paid. The fact that the e-mail was sent to "<list@intrarealty.com>" does not identify IntraRealty, Inc. or Manning as the real estate broker to whom the commission is to be paid. The exhibit does not constitute an agreement for Litton to pay appellees a real estate commission. Plaintiffs' exhibit 1 does not meet the requirements of the statute of frauds in the RELA.

■ Appellees also assert that Plaintiffs' exhibit 1, when read with Plaintiffs' exhibits 4, 5, 6, and 7, satisfies the statute of frauds. Plaintiffs' exhibit 4 is a document on Litton's letterhead and is styled "New Referral E-mail or Fax (Non–Web Broker)." The document identifies the property, the "order/loan" number (which is the same as the file number in Plaintiffs' Exhibit 1), the previous owner, and the "investor." The document is addressed to Zachariah Manning and states, "You have been selected to represent Litton Loan Servicing LP as the agent for this asset." The document then describes the actions Manning is to take for the inspection and protection of the property. It instructs Manning to file a W–9 before submitting any "reimbursement invoices." It also asks that Manning assist appraisers and other brokers seeking entry to the property and states, "You can be assured they are *not* in competition for the listing." This document does not provide a promise to pay a real estate commission to appellees or identify appellees as brokers to whom a real estate commission is to be paid.

Plaintiffs' exhibit 5 is also on Litton's letterhead, and it is headed "Listing Agent Closing Instructions." This document is dated March 15, 2007 and is addressed to Zachariah Manning. Under "RE:," it identifies the property address, the loan number, the buyer's name, the estimated close date, the "Entity Name," and "Commission: $11,700." The remainder of the document contains instructions for Manning to follow before the closing. The document does not contain a promise by Litton to pay Manning or IntraRealty a real estate commission, and it does not identify either appellee as a broker to whom a real estate commission is to be paid.

Plaintiffs' exhibit 6 is the real estate contract, styled "One to Four Family Residential Contract (Resale)," and executed on March 20, 2007. It also identifies the property, and it is signed by Vicknair as buyer and by Litton's "REO Marketing Supervisor" as seller. This document makes no mention of a commission. It does refer to brokers' fees, but it states, "All obligations of the parties for payment of brokers' fees are contained in separate written agreements." In a section of the contract headed "Broker Information And Ratification of Fee," it identifies "IntraRealty" as the "Listing Broker" and "Zachariah C. Manning, Pres/Broker" as the "Listing Associate" and states IntraRealty represents "Seller only as Seller's agent." This section contains blank provisions for the listing broker to pay another broker a portion of the sales price when the listing broker receives its fee. Plaintiffs' exhibit 6 does not contain a promise by Litton to pay appellees a real estate commission, nor does it identify appellees as brokers to whom a commission is to be paid.

Plaintiffs' exhibit 7 is an e-mail dated March 15, 2007 from "sngo@litton.c-bass.com," addressed to "<list@intrarealty.com>," and has the subject heading, "Contract Executed." The document lists the file number and the property address. The document states,

> The contract for the property referenced above has been executed. Please deliver the earnest money to the *seller's* closing agent immediately. The accepted offer information is as follows:

| | |
|---|---|
| Sales Price: | $195,000.00 |
| Earnest Money: | $1,850.00 |
| Scheduled Closed Date: | 3/29/2007 |
| Seller Concessions: | $0.00 |
| Contract Repairs: | $0.00 |

> Special Note: This e-mail is sent upon contract execution in the system. Contracts will be processed and sent to the listing agent with a copy to the seller's title agent within 3 days of this notice.

This document does not identify a broker to whom a real estate commission is to be paid or promise that a commission will be paid.

None of the documents on which appellees rely contains a promise to pay a real estate commission or identifies appellees as brokers to whom a commission will be paid. Accordingly, there is no evidence of a written agreement complying with the statute of frauds provision of RELA. *See* TEX. OCC.CODE ANN. § 1101.806(c); *Lathem,* 290 S.W.3d at 925. We sustain Litton's third issue.

Having sustained Litton's third issue, we need not consider its other issues. TEX. R.APP. P. 47.1.

## CONCLUSION

We reverse the trial court's judgment and render judgment that appellees take nothing on their claims against Litton.