**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00042-CV**
_____

**JONES LANG LASALLE BROKERAGE, INC., Appellant**

**V.**

**EKSS REALTY, L.L.C., Appellee**

On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. CIV31270

**MEMORANDUM OPINION**

Jones Lang Lasalle Brokerage, Inc. ("JLL Brokerage") appeals the trial court's take nothing judgment. JLL Brokerage sued EKSS Realty, L.L.C. ("EKSS") for breach of contract, alleging EKSS failed to pay JLL Brokerage an agreed-upon commission in connection with the negotiation and execution of a lease renewal for a commercial space owned by EKSS. Prior to trial, EKSS objected to the admission of several emails which purported to show the creation and parties' assent to the payment of the agreed-upon commission on the basis that the emails were

1

inadmissible parol evidence. The trial court sustained EKSS's objection and excluded the evidence. On appeal, JLL Brokerage complains that the trial court erred by excluding its evidence of the written contract based upon the application of the parol evidence rule. We affirm.

## Background

Samuel Slovacek is a licensed commercial real estate salesperson with JLL Brokerage. He and JLL Brokerage represented American Hospice, Inc. in negotiating a second lease amendment with American Hospice's landlord, EKSS. Pat McCulley, a broker with Country World Realty, LLC, represented EKSS as its broker during the negotiations.

On January 21, 2016, McCulley sent Slovacek EKSS's proposed revisions to JLL Brokerage's proposal. The proposed revisions included a paragraph concerning the brokerage fee, which stated:

> Landlord acknowledges that there are no other procuring brokers involved in this transaction other than Jones Lang LaSalle and Landlord shall pay a full market commission of four percent (4%) of gross rentals to Jones Lang LaSalle. Said commission shall be paid annually upon the anniversary date of said lease.

On February 1, Slovacek emailed McCulley to confirm the calculation and amount of the commission. McCulley responded "Yes that is the correct amount." On March 15, 2016, McCulley sent Slovacek by email a revised lease proposal and

2

Commission Agreement. Neither the revised proposal nor the Commission Agreement was signed by the parties.

EKSS and American Hospice, Inc. signed a Second Amendment to Lease on August 1, 2016. The amendment contained the following paragraph regarding broker fees:

> **Brokers.** Landlord and Tenant represent and warrant to the other that they have dealt only with **Country World Realty, LLC** and Jones Lang LaSalle ("Brokers") in connection with this Amendment and that, insofar as they know, no other broker negotiated or is entitled to any commission in connection with this Amendment. Landlord will pay any commission annually owed to the Brokers and will indemnify and defend Tenant from and against all claims (and costs of defending against and investigating such claims) of any and all Brokers or similar parties, including Brokers, claiming under Landlord in connection with this Amendment. (emphasis in original)

On August 10, Slovacek emailed the Commission Agreement (signed by JLL Brokerage) to Dr. Shane Shaw, the owner of EKSS, requesting his signature. The Commission Agreement includes the following paragraph:

> **Agreement to Pay Commission.** Landlord hereby agrees to pay a real estate commission to Broker in a sum equal to four percent (4%) of the Gross Rental (defined hereinafter) to be received by the Landlord during the Lease term as shown in the Lease. The commission amount is defined to be $16,387.20. (emphasis in original)

The Commission Agreement does not bear the signature of any representative of EKSS.

In the following weeks, Slovacek emailed Dr. Shaw and McCulley an invoice for commission and requests to return the signed Commission Agreement. On June

3

23, 2017, attorneys for JLL Brokerage sent a demand letter to Dr. Shaw and Dr. Elias Kanaan for failure to pay commissions pursuant to the Commission Agreement.

Suit was filed and the case proceeded to trial. At the conclusion of trial, the jury did not find JLL Brokerage and EKSS agreed in writing that EKSS would pay JLL Brokerage a 4% commission, and the trial court signed a take-nothing judgment. JLL Brokerage then appealed, asserting the trial court erred in excluding JLL Brokerage's evidence under the parol evidence rule.

Standard of Review and Applicable Law

We review a trial court's rulings admitting or excluding evidence for an abuse of discretion. *Heniff Transp. Sys., LLC v. Mack Individually and as Next Friend of D.T.M.*, No. 09-19-00049-CV, 2019 Tex. App. LEXIS 9329, at *4 (Tex. App.—Beaumont Oct. 24, 2019, pet. denied) (mem. op.); *see also State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001) (citation omitted) ("Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion."). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will not reverse for the trial court's erroneous admission of evidence unless it "probably caused the rendition of an improper judgment[.]" Tex. R. App. P. 44.1(a)(1).

"When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). The parol evidence rule precludes enforcement of an alleged agreement, not merely the admission of evidence, regardless of whether the alleged agreement is oral or written. *Id.* "It is not an evidence rule but a substantive rule of law." *Id.* "The rule is particularly applicable when the written contract contains a recital that it contains the entire agreement between the parties or a similarly-worded merger provision." *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The statute of frauds provision of the Real Estate License Act ("RELA") in section 1101.806(c) of the Texas Occupations Code states:

> A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

Tex. Occ. Code Ann. § 1101.806(c). "Strict compliance with RELA is required; the agreement to pay a real estate commission must be in writing or it is not enforceable." *Lathem v. Kruse*, 290 S.W.3d 922, 925 (Tex. App.—Dallas 2009, no pet.). To comply with RELA, an agreement or memorandum must:

5

(1) be in writing and must be signed by the person to be charged with the commission; (2) promise that a definite commission will be paid, or must refer to a written commission schedule; (3) state the name of the broker to whom the commission is to be paid; and (4) either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed.

*Id.* "The essential elements of a commission agreement cannot be supplied by parol evidence." *Boyert v. Tauber*, 834 S.W.2d 60, 62 (Tex. 1992).

Analysis

JLL Brokerage argues that the excluded evidence, namely an email from EKSS's broker who agreed to the amount of the commission due and a proposed Commission Agreement which only JLL Brokerage signed and accepted, establishes the existence of a written contract for the commissions. We disagree. "When it is alleged that an email amounts to a contract binding on the sender, the email's context must be carefully examined to determine whether it truly evidences the grave intent to be legally bound." *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 728 (Tex. 2020).

"Courts applying Texas law have confirmed that such writings couched in futuristic language contemplating later negotiations do not satisfy the statute of frauds." *Id.* at 729. As such, the emails do not satisfy RELA's statute-of-frauds provision because they do not contain a promise that a definite commission will be paid and are merely communications contemplating a contract or promise to be made in the future. *See id.* (analyzing emails leading up to a contract and holding,

"To satisfy the statute of frauds, it is not enough that the writings state potential contract terms."). McCulley's February 1 email only confirms Slovacek's formula for calculating the commission. Subsequent emails show lease proposals and continued negotiations between the two brokers. These discussions include concerns about the commission payment. Considering all the emails, the trial court may have reasonably concluded they were merely ongoing negotiations between JLL Brokerage and EKSS over terms that did not find their way into the final, signed version of the contract which contains different language regarding brokerage commissions.

Moreover, the evidence shows that neither the Commission Agreement nor the emails comply with the requirements of RELA since they were never signed by the party to be charged with the commission, EKSS, or its owner, Dr. Shaw. Even if the emails had been admitted, the result would have been the same because any purported agreement therein would have been unenforceable due to noncompliance with the requirements of RELA.

Conclusion

We overrule JLL Brokerage's sole issue on appeal and affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS<br>
Justice

7

Submitted on August 22, 2025
Opinion Delivered November 6, 2025

Before Golemon, C.J., Wright and Chambers, JJ.