**AFFIRMED and Opinion Filed August 19, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01045-CV**

**ASHTON CHRISTIE, Appellant**
**V.**
**TERRY L. HAHN, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-01096**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Reichek

Following a bench trial, Defendant Ashton Christie appeals a judgment in favor of Plaintiff Terry L. Hahn. The primary issue is whether a note between the parties is a "security" under the Texas Securities Act (TSA). For reasons that follow, the Court affirms the trial court's judgment.

BACKGROUND

The parties stipulated to the following facts. In 1991, Richard Christie founded Christies Sports Bar & Grill. Richard's two sons, Cheston and Ashton, worked at the restaurant since the 1990s. Cheston managed the "back-end" financial operations while Ashton managed the "front-end" and food operations. The

restaurant/bar operated through a Texas corporation, Cheston, Inc. Before 2016, Richard Christie and Sandra Christie owned 100% of the outstanding shares of Christies.

Ashton and Cheston wanted to purchase Christies. In October 2015, Ashton applied for (1) a small business loan in the amount of $700,000 to be guaranteed by the U.S. Small Business Administration and (2) a $100,000 revolving credit loan from JPMorgan Chase. In addition, the brothers approached five people, including Hahn, to raise money for the purchase. Cheston communicated with Hahn and sent him an email soliciting $100,000. In his email, Cheston stated, "I'll give you 10% of the profits until your initial investment is paid back then 5% of the profits in perpetuity and 1% on any sale. This should get you paid back within 3-4 years." On October 27, 2015, Ashton opened a new checking account at Hillcrest Bank ("the Hillcrest account"). Three days later, Hahn wired $50,000 to the Hillcrest account.

On November 12, 2015, Ashton, Cheston, and Hahn executed a document titled "Unsecured Note" ("the Note") in the amount of $100,000 with Hahn as payee and Ashton and Cheston as makers. The Note provided that Hahn would be repaid based on the profits of Cheston, Inc.:

> **Annual Interest Rate on Unpaid Principal from Date:** In lieu of interest, Payee shall receive, as consideration for providing a portion of the purchase price to be paid by Maker for the acquisition of Cheston, Inc. after the repayment of the principal of this Note, an amount equal to ten percent (10%) of the profits of Cheston, Inc., a Texas corporation being acquired by Maker partly with the proceeds of this Note, for as long as the Maker owns an interest in Cheston, Inc. The 10% of profits

shall be distributed to Payee quarterly within thirty (30) days after the end of each quarter. If Maker sells Cheston, Inc., Payee shall be entitled to receive two percent (2%) of the gross sales price payable upon closing of any such sale.

**Terms of Payment (principal):** This Note shall be payable in quarterly installments equal to twenty percent (20%) of the prior quarter's net profits of Cheston, Inc. beginning April 15, 2016 and continuing on July 15, October 15 and January 15 of each year until the entire principal amount has been repaid.

Although the Note does not include an interest rate and indicates the arrangement for repayment is "in lieu of interest," it does contain general references to interest: "Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for . . .; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded." The next day, Hahn wired another $50,000 to the Hillcrest account. Ashton and Cheston are not registered sellers of securities under the TSA, nor was the Note registered with the Texas State Securities Board.

On November 24, 2015, Ashton signed a stock purchase agreement agreeing to acquire all the outstanding shares of Christies for a purchase price of $900,000. He funded the purchase using $675,000 from the proceeds of his small business loan and a $225,000 sellers' note from Richard Christie and Sandra Christie. On December 31, 2015, Ashton transferred $50,000 from the Hillcrest account to Richard Christie toward the stock purchase agreement. Ashton's acquisition of Christies closed and funded on January 8, 2016. When Ashton paid Richard Christie

and Sandra Christie the proceeds of the small business loan, he also paid them $100,000 toward the sellers' note with funds from his revolving credit loan. Between January 13 and January 27, 2016, Ashton made various transfers of money out of the Hillcrest account to his mother, his mother-in-law, his father-in-law, a credit union, and Cheston. Ashton contends these transfers were in repayment of debt. On February 4, 2016, Ashton transferred $65,000 from the Hillcrest account to his father.

In 2017, Ashton placed Christies into Chapter 11 bankruptcy and also filed for personal bankruptcy. Hahn was paid $6,000 in profits before the bankruptcies were filed.

In addition to the stipulated facts, each side presented the following evidence. Hahn testified he had known the brothers since the early 1990s. Cheston asked him to make an investment. Hahn believed Cheston was asking on behalf of himself and his brother Ashton. Cheston told Hahn (1) both he and Ashton were buying the bar, which was important to Hahn because he knew Cheston better than he knew Ashton, trusted Cheston more, and knew Cheston ran the financial end, and (2) Hahn's money would be used to purchase the bar. It was important to Hahn to know what the brothers planned to do with his money. Hahn took the money from his 401K account and said his purpose was to "build an income stream for retirement."

The Note was not payable on demand, did not require monthly principal payments or payment of interest, and was not secured by collateral. Rather, as Hahn

testified, he was to be paid 20% of profits until his initial investment was repaid, and then he would receive 10% of profits in perpetuity. If Christies ever sold, Hahn was to be paid 2% of the gross sales price.

Evidence showed that Hahn's money was not used to purchase Christies but was used to pay off Ashton's personal debts and to make payments to family members. Moreover, only Ashton purchased the bar. Hahn testified he would not have invested had he known either of these facts.

Ashton testified that he and his brother planned to be co-owners of Christies, but Ashton ended up as the sole owner because Cheston could not qualify to be on the small business loan. Ashton used at least some of Hahn's money to get rid of his debt so he could qualify for the small business loan. He indicated that the debts he paid with money from the Hillcrest account were all tied to the business. Cheston testified that he did not tell Hahn his money was going to be used to pay off Ashton's credit cards or to repay family members. Nor did he tell Hahn that Ashton was the only one buying the business.

Hahn brought this suit solely against Ashton asserting that Ashton violated the TSA by selling an unregistered security, without a license, and under false pretenses.[1] Hahn alleged the Note is a security under the TSA and that Cheston acted as Ashton's agent in soliciting funds from Hahn. Hahn alleged Ashton: (1)

---

[1] Hahn apparently brought a separate action against Cheston. Hahn testified he received a default judgment against Cheston for approximately $100,000.

violated TSA § 33(A)(1) by offering or selling a security without registering as a seller under the TSA and by offering or selling a security that was not registered with the Texas State Securities Board ("the registration violations"); and (2) violated § 33(A)(2) by offering or selling a security by means of an untrue statement of material fact and/or by an omission to state a material fact necessary to make the statements made not misleading ("the fraud violations"). *See* TEX. REV. CIV. STAT. ANN. art. 581-33(A).[2] The alleged basis for the fraud violations were Ashton's representations that both brothers were going to purchase Christies and that Hahn's money would be used to make the purchase. In addition, Hahn alleged Ashton was liable for the registration and fraud violations because (1) he directly or indirectly controlled his brother Cheston (§ 33(F)(1)), and (2) he directly or indirectly, with intent to deceive or defraud, or with reckless disregard for the truth or the law, materially aided and abetted Cheston's violations of the TSA (§ 33(F)(2)). Hahn sought rescission of the Note and return of his investment, as well as attorney's fees.

After hearing the evidence, the trial judge found both registration violations and fraud violations. The trial court rescinded the Note and awarded Hahn $94,000, plus attorney's fees and interest. Along with its judgment, the trial court issued extensive findings of fact and conclusions of law. Among the court's findings and conclusions were that the Christie brothers solicited investments from five people,

---

[2] Effective January 1, 2022, the TSA was codified in the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 4001. For ease and clarity, the Court refers to the version in the revised civil statutes in effect at trial and cited by the parties.

including Hahn, to raise $225,000 to purchase Cheston, Inc. Cheston acted on his own behalf and on Ashton's behalf in connection with his solicitations to Hahn and acted as Ashton's agent with respect to this transaction. The Note is a security. References in the Note to "interest on the debt" are in "cut-pasted boilerplate language (in a different size and font)" that is inapplicable because there is no "interest . . . evidenced by the note." The parties expressly agreed that Hahn would be paid profits in "lieu of interest." Ashton and Cheston offered and sold a security to Hahn and were not registered sellers of securities under the TSA. Nor was the Note registered with the Texas State Securities Board. Ashton with intent to deceive or defraud or with reckless disregard for the truth directly or indirectly materially aided Cheston in selling the Note. In addition, Ashton and Cheston sold a security by means of an untrue statement of material fact. Cheston stated that he and his brother would acquire Christies and that Hahn's $100,000 would go toward a portion of the purchase price for acquisition of the sports bar. Ashton used Hahn's money for other purposes. The trial court also found that Ashton and Cheston offered a security by means of an omission to state a material fact necessary to make the statements made, in light of the circumstances under which they are made, not misleading. Neither Ashton nor Cheston disclosed to Hahn that his investment would be used for purposes other than going toward a portion of the purchase price for the acquisition of Christies. Neither brother disclosed to Hahn that Ashton needed to pay off personal debt to qualify for the small business loan and revolving

line of credit. Neither brother disclosed that Cheston would not acquire Christies and did not apply for the small business loan. Hahn would not have invested had he known the facts the brothers omitted to tell him. The trial court concluded that both brothers violated § 33(A)(1) and § 33(A)(2) of the TSA. The court further concluded the Note was not exempt under either § 109.13(a) or § 139.16(a) of the Texas Administrative Code.

In this appeal, Ashton contends (1) the trial court erred in finding that the Note was a security under the TSA; (2) if the Note was a security, he proved an exemption under the TSA; and (3) the evidence is legally and factually insufficient to prove he violated § 33(A)(2).

STANDARD OF REVIEW

In reviewing a legal sufficiency challenge to the evidence, we credit evidence that supports the verdict if a reasonable factfinder could have done so and disregard contrary evidence unless a reasonable factfinder could not have done so. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider all the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in that party's favor. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520–21 (Tex. 2003). The evidence is legally sufficient if "more than a scintilla of evidence exists." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). More than a scintilla of evidence exists if the evidence furnishes some

reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Litton Loan Servicing, L.P. v. Manning*, 366 S.W.3d 837, 840 (Tex. App.—Dallas 2012, pet. denied). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010).

To evaluate a factual sufficiency challenge, we consider and weigh all evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We must not substitute our judgment for that of the factfinder and should remain cognizant that the factfinder is the sole judge of witness credibility. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We review a trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## ANALYSIS

Ashton first contends the trial court erred in determining that the Note was a security. The TSA's definition of "security" is broad. *See* TEX. REV. CIV. STAT. ANN. art. 581-4(A); *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 666 (Tex. 2015). Among other things, the term "security" includes any note or investment contract. TEX. REV. CIV. STAT. ANN. art. 581-4(A). Because the TSA is so similar to the

Securities Exchange Act, Texas courts look to decisions of the federal courts to aid in the interpretation of the Texas act. *Grotjohn Precise Connexiones, Int'l, S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 868 (Tex. App.—Texarkana 2000, no pet.).

Ashton contends the Note is not an investment contract under *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946), which created a test to determine whether a transaction was an investment contract under the federal Securities Act of 1933. He also contends the Note is not a security under *Reves v. Ernst & Young*, 494 U.S. 56 (1990), which set out a "family resemblance" test for courts to use in determining whether a note is a security under federal securities law. Hahn responds that the Note is a security under the Texas Supreme Court's opinion in *Life Partners, Inc. v. Arnold*, which adopted a version of the test set out in *W.J. Howey* to determine whether investment contracts are securities under the TSA. Hahn also maintains the Note is a security under the *Reves* test.

In *Life Partners*, the Texas Supreme Court considered whether a "life settlement agreement" was an investment contract and thus a security under the TSA. 464 S.W.3d at 662. After review of the TSA's language and extensive authorities from Texas and the United States, the court confirmed and clarified that the TSA's definition of "securities" must be broadly construed to maximize the protection it provides to investors, while focusing on the economic realities of the transaction at issue regardless of any labels or terminology the parties may have used. *Id.* at 681. Second, in light of those principles, the court confirmed and

–10–

clarified that an "investment contract" for purposes of the TSA means (1) a contract, transaction, or scheme through which a person pays money (2) to participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominantly due to the entrepreneurial or managerial efforts of others, rather than merely ministerial or clerical efforts of others. *Id.* Finally, the court held that the entrepreneurial or managerial efforts relevant to the inquiry include those made prior to the transaction as well as those made after the transaction. *Id.*

Evidence showed the Note met the *Life Partners* test for an investment contract. Although the contract was labeled an "Unsecured Note," under *Life Partners* we focus on the economic realities of the transaction regardless of the parties' labels or terminology. As stated in the Note, Hahn paid $100,000 to Ashton and Cheston so the brothers could purchase Cheston, Inc. In exchange, Hahn expected to receive profits from Cheston, Inc. The Note did not require the Christie brothers to make monthly principal payments or pay interest. Hahn instead was to receive quarterly payments of 20% of the sports bar's profits until his initial investment was repaid. After that, he would receive 10% of profits in perpetuity and 2% of the gross sales price in the event Christies was sold. Hahn invested to "build an income stream for retirement." He did not have any role in managing Christies; Cheston and Ashton were going to manage the sports bar.

Ashton argues the economic realities of the transaction show the Note was not a security. Without citation to any legal authority, he cites the fact that Cheston, Inc. was not a signatory to the Note and also that the transaction did not give Hahn an ownership interest in Cheston, Inc. It is not surprising that Cheston, Inc. is not a party to the Note. At the time the Note was executed, Ashton did not own Cheston, Inc. The purpose of the Note was to allow him to purchase the business. Ashton also argues, again without citing any authority, that the Note cannot be a security because it is by and between individuals. The Court is not persuaded by this argument as the TSA imposes liability on a "person" who offers or sells a security in violation of the registration requirements or by means of an untrue statement or omission of a material fact. *See* TEX. REV. CIV. STAT. ANN. arts. 581-4(B) (defining "person" and "company" to include "person") and 581-33(A). Broadly construing the TSA definition of a "security," the Court concludes the Note meets the Texas Supreme Court's *Life Partners* test for an "investment contract" and thus is a security under the TSA. In light of this conclusion, the Court need not consider whether the Note is also a security under the U.S. Supreme Court's *Reves* test. We overrule the first issue.

Ashton next asserts that even if the Note meets the definition of a security under the TSA, the Note was exempt "from registration and obligations" under § 5 of the TSA. *See* TEX. REV. CIV. STAT. ANN. art. 581-5 ("Exempt Transactions"). The provisions of the TSA do not apply when a sale is made without any public

solicitation or advertisement, and either (1) the total number of security holders does not exceed 35 persons after taking the sale into account or (2) the sale is to no more than 15 persons in a 12-month period. *See id.* § 581-5(I)(a) and (c). Ashton contends both exemptions apply because he never approached more than five individuals about the sale.

Hahn argues, and we agree, the trial court's judgment can be affirmed without reaching the issue of exemptions because the issue is only relevant to a finding of liability under § 33(A)(1). The trial court found violations of both § 33(A)(1) and (2). Section 33(A)(2) provides that a person who offers or sells a security by means of an untrue statement or omission of a material fact is liable to the person buying the security "whether or not the security or transaction is exempt under Section 5 or 6 of this Act." *Id.* § 581-33(A)(2). Thus the plain language of the TSA prohibits fraud even when a security or seller is exempt from TSA registration provisions. *See Russell v. French & Assocs., Inc.*, 709 S.W.2d 312, 314 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.). As long as the evidence is sufficient to support the trial court's finding that Ashton committed the fraud violations, the Court need not address whether an exemption applies.

Ashton challenges the sufficiency of the evidence on his liability for fraud in selling a security under § 33(A)(2). He argues that he cannot be held liable based on the actions of his brother Cheston and that there were no untrue statements or omissions of material fact.

–13–

The TSA establishes both primary and secondary liability for securities violations. *Darocy v. Abildtrup*, 345 S.W.3d 129, 136 (Tex. App.—Dallas 2011, no pet.) (citing *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005)). Primary liability arises when a person offers to sell a security by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in light of the circumstances, not misleading. *Id.* In contrast, secondary liability is derivative liability for another person's securities violation either because he is a "control person" or because he "aided" the seller of the securities. *Id.*; *see* TEX. REV. CIV. STAT. ANN. art. 581-33(F)(1), (2). Both control persons and aiders are jointly and severally liable with the primary violator to the same extent as if they were the primary violator. *Darocy*, 345 S.W.3d at 137.

Ashton argues he cannot be liable under a theory of aider and abettor liability. He also challenges the trial court's finding that Cheston was his agent with respect to the transaction with Hahn. In support of these contentions, Ashton relies on the fact that he had no communications with Hahn about the loan or acquisition of Christies; Hahn dealt exclusively with Cheston.

The evidence in this case is sufficient to demonstrate that Ashton had primary liability under § 33(A)(2) because Cheston acted as his agent in his dealings with Hahn. A principal is liable for the fraudulent acts and misrepresentations of his authorized agent. *III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.—Dallas 2007, no pet.); *see In re Enron Corp. Securities, Derivative & ERISA*

–14–

*Lit.*, 623 F. Supp. 2d 798, 805 n.3 (S.D. Tex. 2009). A principal is liable for the acts of another acting as his agent only when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Evidence showed Cheston had actual authority. Ashton testified that Cheston represented his interest in connection with the purchase of the sports bar and Cheston acted on his behalf when he solicited an investment from Hahn. This evidence is also sufficient to show that Ashton had secondary liability because he aided and abetted Cheston.

Ashton also challenges the trial court's findings that Cheston's statement (and the Note's statement) that Hahn's investment would go toward a portion of the purchase price for the acquisition of Christies was untrue. He argues the evidence is insufficient on this issue because he did not take Hahn's money and run. Hahn's money was used to purchase Christies; $115,000 from the Hillcrest account was used to pay down the sellers' note.

The Court need not consider this issue because this was not the only untrue statement made. The trial court found that Cheston told Hahn that both he and Ashton would acquire Christies. In addition, the Note states that both brothers would acquire the sports bar. The trial court further found that these statements were material and untrue. Ashton has not challenged these findings on appeal. Where the trial court's findings of fact are unchallenged by complaint on appeal, they are

binding on the appellate court unless the contrary is established as a matter of law or if there is no evidence to support the finding. *MasterGuard L.P. v. Eco Techs. Int'l, LLC*, 441 S.W.3d 367, 375 (Tex. App.—Dallas 2013, no pet.); *In re Estate of Miller*, 243 S.W.3d 831, 839 (Tex. App.—Dallas 2008, no pet.). These unchallenged findings support the trial court's determination that Ashton violated § 33(A)(2) of the TSA by making an untrue statement of material fact or omitting a material fact. The evidence is legally and factually sufficient to support the trial court's finding that Ashton committed fraud violations. It is not necessary to consider whether there was an exemption for the registration violations. We overrule the second and third issues.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

201045F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ASHTON CHRISTIE, Appellant

No. 05-20-01045-CV     V.

TERRY L. HAHN, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-01096. Opinion delivered by Justice Reichek. Justices Nowell and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TERRY L. HAHN recover his costs of this appeal from appellant ASHTON CHRISTIE.

Judgment entered August 19, 2022.