**AFFIRMED and Opinion Filed November 26, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00729-CV**

**POP RESTAURANTS, LLC, Appellant**
**V.**
**ANTHONY MARIO LANGIONE, Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-20-02593-D**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Wright[1]
Opinion by Justice Reichek

Pop Restaurants, LLC appeals the trial court's judgment following a bench trial in this personal injury suit brought by Anthony Mario Langione. Asserting three issues, Pop Restaurants contends (1) there was insufficient evidence of causation, (2) the trial court abused its discretion in denying Pop Restaurants' motion for late designation of its expert, and (3) the trial court erred by admitting Langione's medical records. Concluding Pop Restaurants' arguments are without merit, we affirm the trial court's judgment.

---

[1] The Hon. Carolyn Wright, Justice, Assigned

## Background

While travelling to Dallas to attend a concert, Langione stopped to eat at a Popeye's Louisiana Kitchen restaurant operated by Pop Restaurants. Langione ordered a fried chicken sandwich and consumed about half of it before taking a picture of his meal and sending the picture to his son by text message. The picture shows the uneaten portion of the sandwich. Langione testified he ate only half the sandwich because he felt guilty about deviating from his strict diet.

After returning home from the concert around 1:00 a.m., Langione began sweating. A few hours later he awoke feeling nauseated and began to vomit and experience diarrhea and abdominal pain. When Langione's symptoms did not subside after twenty-four hours, his wife took him to Texas Health Hospital – Azle. Langione informed the hospital staff the only "abnormal" food he had ingested was the chicken sandwich from Popeye's. A stool culture tested positive for Salmonella and Cryptosporidium. Langione's written medical assessment lists Salmonella Enteritis as the diagnosis. After several days in the hospital, Langione's condition improved sufficiently that he was released. His discharge summary states he tested positive for Salmonella and Clostridium.

Langione filed this suit against Pop Restaturants on June 10, 2020 alleging the sandwich he ate at Popeye's caused him to become seriously ill requiring medical treatment. His live pleading sought damages under the theories of strict liability, negligence, res ipsa loquitur, and breach of express and implied warranties. On

November 6, 2020, Langione filed his First Notice of Serving Affidavits pursuant to section 18.001 of the Texas Civil Practice and Remedies Code and Rule 902 of the Texas Rules of Evidence. The filing stated that "[t]he following affidavits, billing statements, and records have been served upon counsel for the Defendant contemporaneously herewith, or are otherwise available for inspection and copying at the offices of Plaintiff's counsel: a) Affidavit of Billing Records Custodian of Texas Health Resources; b) Records of Texas Health Hospital – Azle; and c) Billing of Texas Health Physicians Group." A substantively identical second notice was filed two weeks later with an "Affidavit of Account Records Custodian of Texas Health Physicians Group." The billing records showed a total amount of $32,549.96 in medical expenses.

The trial court set the case for trial without a jury to begin on January 26, 2022. On April 14, 2021, the parties filed a written agreement to extend the deadline for designating experts for an additional thirty days. Three months later, Langione added Pop Investments, L.P. and Sun Holdings, Inc. as defendants and trial was reset for May 31, 2022. All the defendants were represented by the same counsel, Julia Daneshfar. Pop Investments and Sun Holdings were later non-suited.

On May 25, 2022, Pop Restaurants[2] moved for a continuance and for entry of a scheduling order. Attached to the motion was a proposed scheduling order signed

---

[2] Although Pop Investments and Sun Holdings were not nonsuited until July 27, 2022, for clarity we refer only to Pop Restaurants.

–3–

by Pop Restaurants' counsel. It was noted in the motion that the parties could not agree on a schedule and Langione opposed the motion.

The next day, Daneshfar emailed Langione's counsel, Robert Slim, stating, "It looks like we have been reset for trial to December." Daneshfar then asked Slim if he would agree to the proposed scheduling order. Slim called the court coordinator to inquire about the new trial setting and was informed the case had been reset "by agreement." Slim told the coordinator the motion and proposed scheduling order were not agreed to by Langione. After confirming the motion was opposed, the coordinator told Slim she had removed the proposed scheduling order from the judge's chambers before it was signed. The case was then reset for trial on August 16, 2022. Five days later, the trial judge signed the proposed scheduling order submitted by Pop Restaurants and reset the trial date again to December 13, 2022.

On July 11, Pop Restaurants served amended disclosures designating Cedric Wojciech Spak, MD, as its testifying expert. Langione moved to strike the designation arguing the deadline to identify experts had passed more than a year earlier. Daneshfar emailed Slim stating she was confused by the timeliness objection in light of the fact the court had signed the proposed scheduling order which extended the deadline for Pop Secrets to designate its expert until July 22. Slim then filed a motion to withdraw the scheduling order stating he had been unaware the order was signed until he received the email from Daneshfar. The trial court granted the motion, withdrew the scheduling order, and struck Pop Restaurants' expert

—4—

designation without prejudice to the company's ability to move for leave to designate its expert late. The December 13, 2022 trial setting remained unchanged.

On July 18, Pop Restaurants moved to exclude Langione's designated expert, Dr. Catherine Adams Hutt, a food safety specialist. Pop Restaurants argued that, because Hutt was not a physician, she was not qualified to opine on the cause of Langione's illness. Pop Restaurants also argued Hutt's opinions were not reliable because she failed to exclude other plausible causes. Langione responded that Hutt's testimony was not being offered to prove Langione's diagnosis because his medical records already showed he had contracted Salmonella Enteritis. Rather, Hutt was opining on the likely source of the Salmonella pathogen which, he argued, she was well-qualified to do.

The case was not reached for trial on December 13 and was reset for February 23, 2023. In the interim, the trial judge was replaced by a newly elected judge. On January 17, the new judge denied Pop Restaurants' motion to exclude Hutt.

Pop Restaurants did not move for leave to designate its testifying expert until January 30, 2023. A hearing was conducted on the motion on February 20 and the trial court signed an order denying Pop Restaurants' motion for leave on March 2. Trial before the court began on March 14.

At trial, Hutt testified undercooked poultry was by far the most common source of Salmonella. To eliminate Salmonella and other foodborne pathogens, she stated chicken must be cooked to reach an internal temperature of 165 degrees for at

least fifteen seconds. After reviewing the picture of the chicken sandwich Langione took with his phone, Hutt concluded that a portion of the sandwich appeared undercooked. Given that Langione followed an essentially vegan diet other than his meal at Popeye's, that his symptoms appeared within the incubation period for Salmonella poisoning after he ate the sandwich, and that no one else in Langione's family contracted any food-borne illnesses before his visit to Popeye's, Hutt concluded the chicken sandwich was the most likely source of the Salmonella that caused Langione's illness.

Israel Hernandez, regional manager in charge of the Popeye's restaurant in question, testified the restaurant had never failed a safety inspection. He conceded, however, that the restaurant did not appear to follow the company's guidelines for checking the internal temperature of chicken breast filets immediately after they are fried. Instead, the cooked pieces were taken out of the fryer and put in a holding bin for immediate sale to the public. The internal temperature of the filets in the bin was checked only every four hours by the shift manager.

At the close of evidence, Langione's counsel requested that excerpts from Langione's medical records be admitted into evidence. Pop Restaurants objected stating it was never served with the affidavit authenticating Langione's medical records and disputed it had received all the records that were included in the exhibits. Langione's counsel stated he had inadvertently failed to serve Pop Restaurants with the business records affidavit authenticating the Texas Health Hospital – Azle

medical records, but said that all of the medical records were either in Pop Restaurants' possession or had been made available to Pop Restaurants since the case began. Counsel noted that the medical expert Pop Restaurants attempted to designate in July 2022 relied on Langione's medical records in forming his opinions.

Concluding Pop Restaurants had been in possession of the records for over two years, the trial court granted Langione leave to supplement his disclosures with the affidavit and admitted the medical records. The court also granted Pop Restaurants a continuance of the trial for thirty days to prepare its rebuttal.

Trial resumed on April 21 and concluded the same day. After hearing the evidence, the court ruled in favor of Langione and awarded him $32,549.96 for past medical expenses, $32,550 for past physical pain and suffering, $32,550 for past mental anguish, $21,646.86 in prejudgment interest, and $914.12 in costs. Pop Restaurants brought this appeal.

## Analysis

### I. Sufficiency of the Evidence

In its first issue, Pop Restaurants contends the evidence is legally and factually insufficient to support the trial court's judgment. In reviewing a legal sufficiency challenge to the evidence, we credit evidence that supports the verdict if a reasonable factfinder could have done so and disregard contrary evidence unless a reasonable factfinder could not have done so. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 115 (Tex.2009); *City of Keller v.*

–7–

*Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We consider all the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in that party's favor. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520–21 (Tex. 2003). The evidence is legally sufficient if "more than a scintilla of evidence exists." *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Litton Loan Servicing, L.P. v. Manning*, 366 S.W.3d 837, 840 (Tex. App.—Dallas 2012, pet. denied). Circumstantial evidence may be used to establish any material fact so long as the circumstances relied upon have probative force sufficient to constitute the basis of a reasonable inference. *Alarcon v. Alcolac Inc*, 488 S.W.3d 813, 820 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010).

To evaluate a factual sufficiency challenge, we consider and weigh all the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*. We must not substitute our judgment for that of the factfinder and should

remain cognizant that the factfinder is the sole judge of witness credibility. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Pop Restaurants asserts that Langione presented insufficient evidence of causation because he lacked expert medical testimony from a physician that Pop Restaurants' food caused his illness. Expert testimony is generally necessary to establish causation of medical conditions that are outside the common knowledge and experience of jurors. *Rankin v. Hernandez*, No. 14-22-00565-CV, 2023 WL 6814714, at *3 (Tex. App.—Houston [14th Dist.] Oct. 17, 2023, no pet.) (mem. op.). A plaintiff is not, however, required to establish causation as a matter of medical certainty. *Id*. Nor is he required to exclude every other reasonable hypothesis. *Id*. Only if the evidence presents other plausible causes of the plaintiff's injury or condition that could be negated does the plaintiff have to offer evidence excluding those causes with reasonable certainty. *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010). To constitute evidence of medical causation, an expert opinion must rest on reasonable medical probability. *Smith v. Landry's Crab Shack, Inc.*, 183 S.W.3d 512, 514 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Reasonable probability is determined by the substance and context of an expert opinion, rather than the use of any particular words. *Id*.

Langione was diagnosed by a physician at the hospital with Salmonella Enteritis and Pop Restaurants does not dispute this diagnosis. Langione presented evidence that he purchased and ate a portion of a chicken sandwich from a Popeye's

–9–

restaurant operated by Pop Restaurants. The manager of the Popeye's admitted the restaurant did not follow the testing procedures set forth in its training and instruction manual and that it sold chicken to customers before the chicken had been tested to ensure it had been cooked to an internal temperature sufficient to eradicate foodborne pathogens such as Salmonella.

Hutt, a food safety specialist, testified that Salmonella is so common in uncooked poultry that it is always assumed to be present. She stated that poultry had to be cooked to an internal temperature of 165 degrees for at least fifteen seconds to eliminate foodborne pathogens. She further stated that undercooked poultry appears translucent and glassy. After examining the picture of the half-eaten chicken sandwich taken by Langione, Hutt determined a portion of the sandwich appeared undercooked. Based on the picture, the time period within which Langione became symptomatic, Langione's essentially vegan diet other than the sandwich at issue, and the fact that no one else in Langione's household who ate the same food he did contracted a foodborne illness, Hutt opined that undercooked chicken sandwich from Popeye's was the source of Langione's Salmonella Enteritis.

Pop Restaurants argues that Hutt's testimony amounts to no evidence because, as a non-physician, she is not qualified to opine on medical causation. But properly qualified non-physicians may render opinions touching upon the medical field, including questions of medical causation. *Nabors Well Servs., Ltd v. Romero*, 508 S.W.3d 512, 531–32 (Tex. App.—El Paso 2016, pet. denied). The test is whether

–10–

the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *In re Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012).

Hutt's curriculum vitae shows she received her BS, MS, and Ph.D in food science. She worked with corporations, including fast food restaurants such as McDonalds, Pizza Hut, KFC, and Taco Bell, as chief food safety and quality officer. Hutt testified that, as a food safety expert, she has studied foodborne pathogens and the illnesses they cause. She has advised the Centers for Disease Control and the National Restaurant Association on food safety practices and how to prevent the spread of foodborne illnesses. She has also taught medical practitioners about food safety and foodborne illnesses.

The specific issue about which Hutt testified was the likely source from which Langione contracted the foodborne illness Salmonella Enteritis – a matter about which she was uniquely qualified to opine. As stated above, the results of Langione's medical tests and his diagnosis of Salmonella Enteritis by his treating physicians were shown by his hospital records. *See BMLA, Inc. v. Jordan*, 650 S.W.3d 564, 575 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (medical expert testimony required because no testing performed at hospital to determine pathogen present in plaintiff). Unlike the medical negligence cases relied upon by Pop Restaurants which required expert testimony by a physician to establish either a

–11–

diagnosis or a medical standard of care, the diagnosis here was unchallenged and the only negligence at issue was in connection with food preparation.

Pop Restaurant contends that, because Langione's medical records show the presence of Cryptosporidium and/or Clostridium, expert medical testimony was required to eliminate those two pathogens as the source of Langione's illness. The presence of Cryptosporidium and/or Clostridium does not change the undisputed fact that Langione tested positive for the Salmonella pathogen and that his primary diagnosis and treatment was for Salmonella Enteritis. Furthermore, Hutt's expertise in foodborne pathogens and illnesses qualified her to testify as to the likely source of the additional pathogens and whether they contributed to Langione's illness.

Hutt explained that Clostridium, like Salmonella was common in poultry. There was no evidence that Langione ingested any poultry products other than the chicken sandwich he ate at Popeye's. Pop Restaurants does not posit any other plausible source for this pathogen. *See Crump*, 330 S.W.3d at 218.

With respect to the Cryptosporidium, Hutt stated the pathogen can be found in poultry, but is more often found on produce. Hutt did not believe the Cryptosporidium was a significant factor in Langione's illness based on the onset of his symptoms, the description of his symptoms in his medical records, and the fact that none of his family members who shared food with him became ill.

Pop Restaurants argues that berries Langione ate several days before becoming ill could have been the source of both the Salmonella and the

Cryptosporidium. Hutt testified that eating undercooked poultry poses a much higher risk of contracting an illness from Salmonella than other food products because Salmonella is in essentially every piece of chicken that is raw, and there was photographic evidence showing the piece of chicken Langione ate was undercooked. By comparison, there was no evidence suggesting the berries were tainted in any way. Langione was not required to prove the chicken sandwich was the source of his Salmonella Enteritis as a matter of medical certainty. *See Rankin*, 2023 WL 6814714, at \*3. We conclude the evidence was sufficient to show as a matter of reasonable medical probability that Langione's undisputed Salmonella Enteritis came from the food he ate at Popeye's. *See Smith*, 183 S.W.3d at 514. We resolve Pop Restaurants' first issue against it.

## II. Exclusion of Expert

In its second issue, Pop Restaurants contends the trial court abused its discretion in excluding its expert witness because Langione cannot show he was surprised or prejudiced by the expert's late designation. Texas Rule of Civil Procedure 193.6 governs the admissibility of evidence that is not timely disclosed. If a witness is not timely identified, they may not testify at trial unless the trial court finds (1) there was good cause for the failure to identify the witness in a timely manner, or (2) the failure to timely identify the witness will not unfairly surprise or unfairly prejudice the other parties. TEX. R. CIV. P. 193.6. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the

party seeking to call the witness and the showing must be supported by the record. *Id.* We review the trial court's decision for an abuse of discretion. *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 270 (Tex. App.—Austin 2002, pet. denied).

Pop Restaurants did not designate its expert by the initial deadline. Nor did it designate its expert within the thirty-day extension period to which the parties agreed. Instead, two years after the case was filed, and six days before the case was set to go to trial, Pop Restaurants moved for a continuance and requested the entry of a scheduling order extending the deadline to designate its expert once again. Although the trial court initially granted the continuance and signed the scheduling order, it did so based on the misunderstanding that the scheduling order had been agreed to. The court then withdrew the scheduling order, but informed Pop Restaurants it could move for leave to designate its expert late. The court told Pop Restaurants to be "mindful" of the fact that trial was set to begin in seven weeks. Despite this, Pop Restaurants did not file its motion for leave before that trial setting. Instead, after the case was not reached and the trial date was reset, Pop Restaurants moved for leave to designate its expert six weeks before the new trial date and set the hearing on the motion for shortly before trial was to begin.

Pop Restaurants does not argue there was good cause for its delay in designating its expert witness. It argues only that Langione was neither surprised nor prejudiced by the late designation. Pop Restaurants relies on the fact that Langione was served with the expert's report more than seven months before the

–14–

case ultimately went to trial. But multiple trial settings came and went without the expert being designated, including one setting after Pop Restaurants was told by the trial court it needed to move promptly for leave to designate its expert. A party is entitled to prepare for trial assured that a witness will not be called if they have not been identified. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 915 (Tex. 1992). Given the length of time it took Pop Restaurants to initially designate its expert and the fact that it allowed a trial date to pass without moving for leave, Langione would be justified in believing Pop Restaurants did not intend to call the expert at trial.

In addition, Pop Restaurants scheduled its motion for leave to be heard shortly before trial. Absent another continuance that would further delay resolution of Langione's claims, Langione would not have had the opportunity to depose the expert prior to trial. Even assuming Langione had the opportunity to depose the expert, this does not establish the absence of unfair surprise or prejudice. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.— Dallas 2011, pet. denied). We conclude Pop Restaurants failed to carry its burden of establishing the absence of unfair surprise or unfair prejudice. We resolve its second issue against it.

## C. Admission of Medical Records

In its third issue, Pop Restaurants argues the trial court erred in admitting Langione's medical records from Texas Health Hospital – Azle because it was not timely served with an affidavit in support of those records under section 18.001 of

the civil practice and remedies code. Section 18.001 allows a party seeking to recover past medical expenses to present evidence concerning the reasonableness and necessity of those expenses through an affidavit made by either the person who provided the service or the person in charge of records showing the service provided and the charge made. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001. The record shows Langione did this by filing an affidavit of the custodian of records for Texas Health Resources, along with the billing records for the services he received, within the time period prescribed by section 18.001. *See id*. The custodian testified "[t]he services were necessary and the amounts charged for the services were reasonable at the time and place that the services were rendered." Pop Restaurants does not dispute it was timely served with these documents. It filed no counteraffidavit controverting the reasonableness of the charges or the necessity of the services and the billing records were admitted at trial without objection. *See id*.

The records made the subject of Pop Restaurants' challenge are Langione's medical treatment records. The affidavit Langione inadvertently failed to serve on Pop Records before trial was not an affidavit testifying to the reasonableness and necessity of Langione's medical expenses under section 18.001, but a business records affidavit authenticating his medical records under rule 902(10) of the Texas Rules of Evidence.

For business records to be admissible under rule 902(10), the records and supporting affidavit must be filed and served on each party in the case fourteen days

before trial. TEX. R. EVID. 902(10)(A). "When an act is required to be performed within a specified time, the court generally has discretion to order that period of time enlarged." *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 437 (Tex. App.—Dallas 2010, no pet.). Even if the trial court abuses its discretion by extending the time period for filing a business records affidavit, there is no reversible error unless the party opposing admission of the evidence is harmed by the extension. *Id*.

In this case, although Langione did not provide Pop Restaurants with the affidavit authenticating his medical records fourteen days before trial, the trial court found Pop Restaurants was provided with the medical records themselves more than two years before trial began. Pop Restaurants was given a thirty-day continuance to address any issues raised by the admission of the records, which is twice as long as Pop Restaurants would have had to prepare if the affidavit had been timely served. Pop Restaurants argues it was anticipating the ability to cross-examine a live witness brought in to prove up the medical records and continuing the case for thirty days did not cure this harm. But Pop Restaurants does not explain what testimony it was hoping to elicit in its cross-examination or why it could not have called the witness itself. We conclude any error in allowing Langione to serve his business records affidavit late was harmless. *Id*. We overrule Pop Restaurants' third issue.

We affirm the trial court's judgment.

/Amanda L. Reichek/

AMANDA L. REICHEK

JUSTICE

230729F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

POP RESTAURANTS, LLC,
Appellant

No. 05-23-00729-CV     V.

ANTHONY MARIO LANGIONE,
Appellee

On Appeal from the County Court at Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-20-02593-D.
Opinion delivered by Justice Reichek. Justices Nowell and Wright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ANTHONY MARIO LANGIONE recover his costs of this appeal and the full amount of the trial court's judgment from appellant POP RESTAURANTS, LLC and from Great Midwest Insurance Company as surety on appellant's supersedeas bond.

Judgment entered November 26, 2024